Maurice GITTENS, Petitioner–
Appellant,

v.

Fredrick MENIFEE, Warden FCI,
Respondent–Appellee.

Docket No. 03–3623.

United States Court of Appeals,
Second Circuit.

Argued: Nov. 22, 2004.

Decided: Nov. 2, 2005.

Larry Yackle, Boston, MA, for Petitioner–Appellant.

Jaikumar Ramaswamy, Assistant United States Attorney (Peter G. Neiman, Assistant United States Attorney, on the brief), for David N. Kelley, United States Attorney for the Southern District of New York, for Respondent–Appellee.

Before: CALABRESI, B.D. PARKER, and RAGGI, Circuit Judges.

PER CURIAM.

On June 23, 2003, petitioner-appellant Maurice Gittens filed a *pro se* petition for habeas corpus under 28 U.S.C. § 2241, challenging his detention and underlying deportation order on the grounds that he

had not been apprised of his right to seek discretionary relief under § 212(c) of the Immigration & Nationality Act ("INA") of 1952, 8 U.S.C. § 1182(c) (repealed Sept. 30, 1996), when he consented to deportation. Because Gittens had unsuccessfully sought habeas relief on multiple occasions between November 2000 and January 2003, asserting substantially the same argument each time, the United States District Court for the Southern District of New York (Mukasey, *C.J.*) treated Gittens' petition as a second and successive motion under 28 U.S.C. § 2255 and transferred it to this court for review under the gatekeeping requirements of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (codified at 28 U.S.C. § 2244(b)(3)).

When the petition was originally submitted to us, the government acknowledged that the district court had erred in its construction of Gittens' application and agreed with him that we should consider his filing as a habeas petition under § 2241, a statutory route that Gittens had pursued only once before. Cast as a § 2241 petition, Gittens' case presented the question of whether the AEDPA's gatekeeping standards apply to a second habeas petition filed pursuant to § 2241.[1] Resolution of that issue is, however, no longer necessary for Gittens' case in light of the passage, on May 11, 2005, of the REAL ID Act of 2005, Pub.L. No. 109–13, 119 Stat. 231 (hereinafter "REAL ID Act" or "Act"). The REAL ID Act "eliminates habeas corpus review of orders of removal and requires that any § 2241 petition pending in the district court at the time of its enactment be transferred to the court of appeals in which the petition could have been properly brought as a petition for review from a final order of removal under 8 U.S.C. § 1252." *See Marquez–Almanzar v. INS,* 418 F.3d 210, 212 (2d Cir.2005). Although Gittens' § 2241 petition was not "pending" before a district court in the ordinary sense, we, like our sister circuits, conclude that Congress intended that his application be treated as a petition for review under § 1252. We, therefore, can consider Gittens' petition, and, for the reasons given below, we deny it.

## BACKGROUND

Gittens' criminal background is no less extensive than the procedural history of his case. A native and citizen of Jamaica, Gittens was first convicted in 1977 of first and second degree robbery in violation of New York state law. Although he was sentenced to consecutive terms of seven and ten years in prison, he was released on parole in 1980. Two years later, after being convicted of criminal possession of a weapon, second degree grand larceny, and attempted burglary, Gittens was sentenced to ten years in prison. Upon his release on parole in 1988, the Immigration and Naturalization Service ("INS") arrested Gittens and brought him before an immigration judge.

The circumstances surrounding Gittens' 1988 immigration hearing remain disputed and provide the factual predicate for Gittens' present and previous habeas applications. In essence, Gittens contends that he did not consent to deportation voluntarily because of the undue pressure the immigration judge applied on him to waive his right to seek § 212(c) relief. A deportation order was entered, and Gittens was

---

1. To date, we have not resolved this question. A number of other circuits have concluded, however, that the AEDPA's gatekeeping provisions do not apply to second and successive § 2241 petitions. *See, e.g., Rosales–Garcia v. Holland,* 322 F.3d 386, 398–99 (6th Cir.2003); *Zayas v. INS,* 311 F.3d 247, 255 (3d Cir. 2002); *Barapind v. Reno,* 225 F.3d 1100, 1111 (9th Cir.2000); *Valona v. United States,* 138 F.3d 693, 694 (7th Cir.1998).

duly deported. This order has been twice reinstated following petitioner's unauthorized returns to the United States. In October 1989, following his first illegal reentry into the country, Gittens was convicted of attempted criminal possession of a weapon and was again deported to Jamaica in 1992. The INS apparently lost track of Gittens until February 1997 when they "found" him in the United States after learning that he had been arrested in South Carolina in 1993 for possession of cocaine with intent to distribute. Gittens was once more arrested in February 1999 and finally prosecuted for his unlawful return to the United States. Gittens pleaded guilty under 8 U.S.C. § 1326(a)-(b)(2) of illegal reentry after having been deported for aggravated felony convictions, and was sentenced to 77 months in prison. *See United States v. Gitten,* 231 F.3d 77, 78 (2d Cir.2000).[2] Following his release in October 2004, Gittens was detained by the Bureau of Citizenship and Immigration Services ("BCIS"). But rather than remain in executive detention, Gittens submitted to deportation and, as far as we know, is now back in Jamaica.

Since November 2000 when his conviction and sentence for illegal reentry became final, Gittens has pursued multiple avenues of judicial review, unsuccessfully challenging his detention and deportation on several different grounds. *See, e.g., United States v. Gitten,* 2001 WL 363052, at *3 (S.D.N.Y. Apr.10, 2001) (denial of § 2255 petition alleging, *inter alia,* ineffectiveness of counsel); *Gitten v. United States,* 2002 WL 662883, at *1 (S.D.N.Y. Apr.23, 2002) (denial of Rule 60(b) motion to vacate denial of earlier § 2255 petition); *Gitten v. United States,* 2002 WL 1891338, at *1 (S.D.N.Y. Aug.15, 2002) (denial of

second Rule 60(b) motion); *Gittens v. Ashcroft,* 2002 WL 31323833, at *3 (S.D.N.Y. Oct.16, 2002) (denial of § 2241 petition alleging, *inter alia,* involuntary waiver of right to seek § 212(c) relief); *Gitten v. United States,* 311 F.3d 529 (2d Cir.2002) (remanding second Rule 60(b) motion for further consideration).

Of these decisions, most relevant to the instant petition is the denial of Gittens' first § 2241 petition by the District Court for the Southern District of New York (Chin, *J.*). Rejecting the argument that Gittens had been wrongly deprived of the opportunity to seek discretionary relief under § 212(c) of the INA, the court found that Gittens was statutorily ineligible for § 212(c) relief because "Gittens [had] been convicted of several aggravated felonies for which he [had] served more than five years in prison." *Gittens v. Ashcroft,* 2002 WL 31323833, at *3 (S.D.N.Y. Oct.16, 2002). In his current petition, Gittens has asserted an argument substantially similar to that previously rejected by Judge Chin.

## DISCUSSION

Without considering the merits of Gittens' claims in the instant case, the district court (Mukasey, *J.*) transferred Gittens' latest petition to us for review under the AEDPA's gatekeeping provisions. While this case was pending, however, Congress enacted the REAL ID Act on May 11, 2005. This Act eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review under § 1252, which circuit courts alone can consider. *See* REAL ID Act, 119 Stat. 231, § 106(a). By its express terms, the Act is retroactive and applies to cases "in which the final administrative order of removal, deporta-

---

2. Earlier decisions disposing of Gittens' various appeals use alternate spellings of petitioner's name in the caption (spelling it with and without an 's'). We report the cases as they are published, i.e., without correction.

tion, or exclusion was issued before, on, or after" the date of enactment. *See id.* at § 106(b). In addition, with respect to cases pending before a district court on the date of enactment, § 106(c) directs that these petitions be transferred to the court of appeals "in which a petition for review could have been properly filed." *See id.* at § 106(c). In these circumstances, the court of appeals should "treat the transferred case as if it had been filed pursuant to a petition for review" under § 1252. *See id.*

■ In light of the changes wrought by the REAL ID Act, the first issue before us is whether we should consider Gittens' petition ourselves or whether the case should be remanded to the district court from which it was transferred. Although Congress expressly prescribed the transfer protocol for cases pending before *district* courts at the time of the Act's enactment, it failed to state how similar habeas petitions pending before *circuit* courts should be handled. The Third, Fifth and Ninth Circuits have considered this question and have concluded that "it is readily apparent, given Congress' clear intent to have all challenges to removal orders heard in a single forum (the courts of appeals), that those habeas petitions that were pending before this court [of appeals] on the effective date of the Real ID Act are properly converted to petitions for review and retained by this court." *Bonhometre v. Gonzales,* 414 F.3d 442, 446 (3d Cir.2005) (internal citations omitted); *see also Alvarez–Barajas v. Gonzales,* 418 F.3d 1050, 1053 (9th Cir.2005) ("The language and structure of the [REAL ID] Act ... evidences Congress' clear intention to make circuit courts the 'sole and exclusive means of

judicial review' for challenges to removal.... Any other interpretation of the REAL ID Act would create an absurd result where the circuit courts would lack jurisdiction to review habeas petitions by aliens that were pending before the circuits when the REAL ID Act passed, but would allow such review if the petition was still pending before a district court." (internal citation and footnote omitted)); *Rosales v. Bureau of Immigration & Customs Enforcement,* 426 F.3d 733, 2005 WL 2292526, at *3 (5th Cir. Sept. 21, 2005) (per curiam) ("Congress neglected, however, to specify what was to happen to habeas petitions, such as this one, that were already on appeal as of the REAL ID Act's effective date.... [W]e hold that despite Congress's silence on this issue, habeas petitions on appeal as of May 11, 2005, [the date of enactment], are properly converted into petitions for review.").

In *Marquez–Almanzar,* which considered an appeal of a district court's conclusion that it was jurisdictionally barred from hearing the habeas petition that had been presented to it, we ourselves noted the inefficiency of remanding a case that would, straight away and mechanically, be rerouted back to us for further adjudication: "[I]t would be pointless to remand this case to the district court, as the district court would be obliged by section 106(c) of the Act to transfer the case back to us for resolution on the merits." *Marquez–Almanzar,* 418 F.3d at 215. We have, however, twice sidestepped, as not before us, the precise question of how to handle habeas petitions pending before a court of appeals after the passage of the REAL ID Act.[3] We now expressly adopt the reasoning of our sister circuits and

---

**3.** *See Belnome v. Gonzales,* 137 Fed.Appx. 434, 435 (2d Cir.2005) (unpublished opinion); *Niver v. INS,* 135 Fed.Appx. 464, 464 n. 1 (2d Cir.2005) (unpublished opinion) ("Whether or

not Congress intended to affect habeas petitions where judgment has already been entered by a district court, we do not need to resolve this issue.").

conclude that we may resolve Gittens' petition ourselves without remand to the district court.[4]

■ On the foregoing issue, the parties are in substantial agreement with each other and with the position we have adopted. They part company, however, as to whether Gittens' petition for review should be governed by § 1252(d)(2), or whether the traditional "abuse of the writ" standard enunciated in *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), remains applicable even after the passage of the REAL ID Act. Under § 1252(d)(2), judicial review of an order of removal is available only where "another court has not decided the validity of the order, unless the reviewing court finds that the petition presents grounds that could not have been presented in the prior judicial proceeding or that the remedy provided by the prior proceeding was inadequate or ineffective to test the validity of the order." The *McCleskey* doctrine, by comparison, bars new claims unless a petitioner can establish "cause and prejudice," or, in the absence of cause, demonstrates that "a fundamental miscarriage of justice would result from a failure to entertain the claim." *McCleskey*, 499 U.S. at 494–95, 111 S.Ct. 1454.[5] Because we find that Gittens' claim would fail if treated as a second petition under § 1252(d)(2)—since

---

4. In doing so, we also note the First Circuit's rationale, which stressed that petitions pending before a court of appeals are, as a technical matter, also pending before the district court below. Such petitions, it reasoned, therefore fall squarely within the textual ambit of the REAL ID Act:

> Here, on the date of enactment [of the Act], the appeal from the district court's dismissal order was pending in our court; the habeas petition itself had been dismissed in the district court. Nonetheless, we think the habeas case was still "pending" in the district court within the meaning of the Real ID Act. Until our court acted on the appeal, the case necessarily remained alive in the lower court although dormant.

*Ishak v. Gonzales*, 422 F.3d 22, 30 (1st Cir. 2005). Reinforcing the reasoning of the other circuits, the First Circuit's approach may be particularly relevant to the instant case given the posture in which Gittens' petition reaches us. Unlike the Third, Fifth and Ninth Circuit cases—in which the habeas petition reached the circuit court on appeal after the district court denied the petition below—Gittens' petition was before us only for the purposes of gatekeeping review under the AEDPA. *Cf. Kusay v. United States*, 62 F.3d 192, 194 (7th Cir.1995) (stating, albeit outside of a habeas context, that a circuit court obtains jurisdiction over "those aspects of the case involved in the appeal," leaving other aspects of the case pending before the district court (*quoting Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982))).

5. In this respect, we note that a seeming difference between *McCleskey* and § 1252(d)(2) is that the abuse of the writ doctrine, adopted by *McCleskey*, permits review to rectify a "fundamental miscarriage of justice," while no such language exists in § 1252(d)(2). Such a condition may, however, be implicit in the statutory provision. The REAL ID Act functionally replaces habeas jurisdiction with petitions for review under § 1252. As a result, that Act might give rise to Suspension Clause problems if the remedy made available under § 1252 is not an adequate substitute for traditional habeas review. *See INS v. St. Cyr*, 533 U.S. 289, 305, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) ("It necessarily follows that a serious Suspension Clause issue would be presented if we were to accept the INS' submission that the 1996 statutes have withdrawn that [habeas] power from federal judges and *provided no adequate substitute* for its exercise." (emphasis added)).

Thus, had Gittens presented a colorable challenge to his deportation, we might have been required to decide (a) whether the *McCleskey* doctrine or § 1252(d)(2) applied, and (b) if the latter governed, whether some judicial review to remedy a miscarriage of justice were nonetheless available under § 1252(d)(2). Since, however, petitioner's deportation challenge fails on any of these theories, we can leave all these issues to another day.

a federal court has already ruled on the merits of his § 212(c) argument—and would also fail under *McCleskey*—because he presents no "new" claim and, in any event, cannot show prejudice or a fundamental miscarriage of justice, as his petition is plainly without merit for the reasons stated by Judge Chin in *Gittens v. Ashcroft*, 2002 WL 31323833, at *2–3—we need not decide which standard is applicable.

For the foregoing reasons, Gittens' petition for review is hereby DENIED.