**Franklin Antonio MORENO–BRAVO, Plaintiff–Appellant.**

**v.**

**Alberto R. GONZALES,[*] Defendant–Appellee.**

**Docket No. 03–2968.**

United States Court of Appeals, Second Circuit.

Submitted Sept. 9, 2005.

Decided Sept. 12, 2006.

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft.

Franklin A. Moreno–Bravo, Gadsden, AL, submitted a brief as Pro Se Plaintiff–Appellant.

Marjorie M. Smith, Piermont, NY, submitted a brief for Plaintiff–Appellant.

Elliot M. Schachner, Assistant United States Attorney, Brooklyn, N.Y. (Roslynn R. Mauskopf, United States Attorney, Steven Kim, Assistant United States Attorney, Eastern District of New York, Brooklyn, NY, of counsel), submitted a brief for Defendant–Appellee.

Before CARDAMONE, McLAUGHLIN, and POOLER, Circuit Judges.

CARDAMONE, Circuit Judge.

Franklin Antonio Moreno–Bravo (petitioner or appellant) appeals from the November 19, 2003 judgment of the United States District Court for the Eastern District of New York (Ross, J.), denying his petition for a writ of habeas corpus. While his appeal was pending in this

Court, Congress passed the REAL ID Act of 2005 (REAL ID Act, REAL ID, or Act), Pub.L. No. 109–13, 119 Stat. 231, 302, which greatly altered the legal framework for disposing of habeas petitions that, like Moreno–Bravo's, challenged a final order of removal. That act of Congress precipitated the principal issues before us on this appeal. To sort through and bring order to what Congress said and what its purpose was in passing the section of the REAL ID Act that we focus on here is not an endeavor, as the reader will observe, that promises to become a popular pastime.

Two questions presented are first, whether an alien's habeas petition challenging a final order of removal and pending in this Court during the enactment of the REAL ID Act should be converted to a petition for review brought under 8 U.S.C. § 1252; and second, whether the Act compels this Court, as a matter of jurisdiction, to transfer the case to the circuit where the alien's immigration proceedings were held—here, the Fifth Circuit. The first question has already been answered by us in the affirmative in *Gittens v. Menifee,* 428 F.3d 382 (2d Cir.2005) (per curiam), decided after the present appeal had been submitted. The second question, which is one of first impression in this Circuit, we now answer in the negative; that is, we decline to transfer plaintiff's petition to the Fifth Circuit.

## BACKGROUND

We set out the background. Moreno–Bravo was born in Peru on October 24, 1974 and entered the United States as a lawful permanent resident in 1988 at age 14. He lived in New Jersey and has been residing in the United States ever since his lawful entry. In October 1996 he snatched a gold chain from the neck of one Mercedes Martinez in Elizabeth, New Jersey.

He was immediately apprehended by the police, and later on December 11, 1996 pled guilty to robbery in the second degree. The New Jersey Superior Court sentenced him to four and a half years imprisonment.

Because of his conviction, the Immigration and Naturalization Service (INS) initiated removal proceedings in February 2001. The INS charged petitioner as removable from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), which states that a lawful resident "alien who is convicted of an aggravated felony at any time after admission is deportable." Moreno–Bravo's immigration proceedings commenced in Oakdale, Louisiana, where he contended before an immigration judge (IJ) that the term "aggravated felony" as it is used in the Immigration and Nationality Act (INA) does not contemplate deportation of aliens who, like him, were sentenced to less than five years imprisonment for their convictions. The IJ rejected this argument, finding Moreno–Bravo removable as charged and ineligible for discretionary relief by the Attorney General. The Board of Immigration Appeals (BIA) summarily affirmed the IJ's decision and issued a final order of removal on October 23, 2002.

Moreno–Bravo then collaterally attacked this final order by filing a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the United States District Court for the Eastern District of New York. His claim for habeas relief was based largely on the same grounds as those raised in his immigration proceedings—namely, that his 1996 conviction did not constitute an aggravated felony for purposes of removal because it involved less than five years imprisonment, qualifying him for discretionary relief under a now-repealed section of the INA, § 212(c).

*See generally INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

The district court denied Moreno–Bravo's petition for habeas relief. It found that though petitioner correctly claimed that his criminal conviction for second-degree robbery required an imprisonment term of at least five years to qualify as an aggravated felony under the latest codified version of the INA as of December 1996, *see* 8 U.S.C. § 1101(a)(43)(F)-(G) (1994), Congress had subsequently redefined and expanded the term to encompass crimes that, like his, involved imprisonment terms of only a year or more, 8 U.S.C. § 1101(a)(43)(F)-(G) (as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, § 321(a), 110 Stat. 3009–546, 3009–627). *See Guaylupo–Moya v. Gonzales*, 423 F.3d 121, 126–27 (2d Cir.2005). And, relying upon our decision in *Kuhali v. Reno*, 266 F.3d 93, 110–11 (2d Cir.2001), the district court held that the more recent, expanded definition of aggravated felony applied to petitioner's case and denied his petition for a writ of habeas corpus.

Moreno–Bravo appealed the district court's denial of his habeas petition on December 4, 2003 and obtained a stay of removal pending our review of the district court's decision. While Moreno–Bravo's appeal was pending, and after appellate briefs had been filed by the parties, Congress on May 11, 2005 enacted the REAL ID Act, which transformed the legal framework for disposing of habeas petitions challenging orders of removal.

Section 106 of the Act, the relevant portions of which are set out in an appendix at the end of this opinion, withdrew federal courts' jurisdiction to review final orders of removal through the habeas statute, 28 U.S.C. § 2241, and mandated that "a petition for review filed with the appropriate court of appeals in accordance with [8 U.S.C. § 1252] shall be the sole and exclusive means" by which an alien could challenge such an order. REAL ID Act § 106(a), 119 Stat. at 310. Regarding habeas petitions challenging a final order of removal that were still pending in district court at the time of REAL ID's enactment, § 106(c) instructed *district* courts to transfer such petitions to the court of appeals in which the petitions could have been properly brought under 8 U.S.C. § 1252, where they were to be converted by the court of appeals to petitions for review brought under that section. *Id.* § 106(c), 119 Stat. at 311. The Act contained no similar procedural protocol for a habeas petitioner like Moreno–Bravo whose case was pending in the court of appeals, rather than in the district court, at the time of REAL ID's enactment.

Because of the important and novel issue raised by this appeal, we ordered counsel be appointed for petitioner and further briefing on whether, in light of REAL ID Act § 106(c), this appeal should be converted to a petition for review and, if so, whether this case should be transferred to the United States Court of Appeals for the Fifth Circuit, the circuit where Moreno–Bravo's immigration proceedings were completed.

With this background in mind, we turn to the questions before us.

## DISCUSSION

### I Conversion of Habeas Petition to a Petition for Review

█ Although our order requesting supplemental briefing phrased the two questions as if the first (whether REAL ID required the appeal to be converted to a petition for review) was antecedent to the second (whether we are compelled as a matter of jurisdiction to transfer the case

to the Fifth Circuit), in reality the issues are not analytically extricable. It is not necessarily the case that Moreno–Bravo's habeas appeal may be transferred *only* if it is first converted to a petition for review pursuant to § 106(c) of REAL ID. Theoretically, in addition to being converted by this Court and then either transferred or retained by us, the appeal also could be transferred by us to the Fifth Circuit before it is formally converted, which would allow *that* court of appeals "to treat the transferred case as if it had been filed" as a petition for review pursuant to § 106(c); or it could be remanded to the district court and transferred by the lower court to the Fifth Circuit, which again would permit, albeit more circuitously, the other appellate court to convert the appeal. Indeed, the latter option appears to have been contemplated in dicta by another circuit, *see Ishak v. Gonzales,* 422 F.3d 22, 30 n. 6 (1st Cir.2005), while the former parallels the transfer procedure the Act commands district courts to perform, and thus better conforms, on some level at least, to the text of § 106(c).

Nevertheless, we will, in the circumstances here presented, convert this appeal pursuant to our decision in *Gittens,* which expressly adopted the reasoning of sister circuits and held that "those habeas petitions that were pending before this [Court] .... on the effective date of the REAL ID Act are properly converted to petitions for review and retained by this [C]ourt." *Gittens,* 428 F.3d at 385 (quoting *Bonhometre v. Gonzales,* 414 F.3d 442, 446 (3d Cir. 2005)); *see also Gonzales–Gomez v. Achim,* 441 F.3d 532, 533 (7th Cir.2006); *Rosales v. Bureau of Immigration & Customs Enforcement,* 426 F.3d 733, 736 (5th Cir.2005); *Ishak,* 422 F.3d at 29–30; *Alvarez–Barajas v. Gonzales,* 418 F.3d 1050, 1053 (9th Cir.2005).

Obviously conversion by this Court is not barred as a matter of jurisdiction since that was precisely the holding of *Gittens,* and such authority is not diminished by the prospect of a petition being in the wrong circuit. *E.g., Amunikoro v. Sec'y of Dep't of Homeland Sec.,* 432 F.3d 383, 387 (2d Cir.2005) (per curiam) (converting habeas appeal to petition for review pursuant to § 106(c) prior to transferring petition to circuit where immigration proceedings occurred). Moreover, the government has never urged an alternative procedural disposition, and to the contrary has specifically requested that we convert the present appeal to a petition for review, vacating as a nullity the district court's decision below. *See Duvall v. Att'y Gen. of U.S.,* 436 F.3d 382, 386 (3d Cir.2006). We do so now, and consequently treat this case as if it had been filed pursuant to a petition for review under 8 U.S.C. § 1252, except that the filing deadline for such a petition does not apply. REAL ID Act § 106(c), 119 Stat. at 311.

## II  Venue and Appellate Jurisdiction

The issue before us is whether this Circuit is the proper forum to rule on appellant's petition for review. To decide that, we must determine whether § 1252(b)(2) is a venue provision or a jurisdictional mandate.

Had this petition been filed pursuant to 8 U.S.C. § 1252, it would have been subject to § 1252(b)(2), which is entitled "Venue and forms." That section states that "[t]he petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." A plain reading of this provision suggests that the appropriate court of appeals lies in the Fifth Circuit, because Moreno–Bravo's immigration proceedings were completed in Louisiana. In virtually every case this will be so. The

government declares, however, that we are *compelled* by this provision to transfer the case to the Fifth Circuit—that is, it is the government's position that we do not have jurisdiction over the petition, except insofar as jurisdiction is necessary to complete a transfer. *See Phillips v. Seiter,* 173 F.3d 609, 610–11 (7th Cir.1999).

■■■ The government's position is quite different from, and far more ambitious than, the more modest view that § 1252(b)(2) provides for the proper location of filing a petition for review. In commenting on this issue in an earlier case involving § 1252(b)(2) and REAL ID, we observed that venue in the federal courts "is a concept of convenience," not a jurisdictional mandate. *Amunikoro,* 432 F.3d at 386 (quoting *Rutland Ry. Corp. v. Bhd. of Locomotive Eng'rs,* 307 F.2d 21, 29 (2d Cir.1962)). Whereas issues of jurisdiction relate to the basic authority of a court to hear and decide a case, venue, by contrast, is in the nature of a convenience to litigants and subject to their disposition. "This basic difference between the court's power and the litigant's convenience is historic in the federal courts." *Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 168, 60 S.Ct. 153, 84 L.Ed. 167 (1939). Perhaps the most practical effect of the distinction is that an objection to defective or improper venue may be forfeited, if not raised at the appropriate time. *Tri-State Employment Servs., Inc. v. Mountbatten Sur. Co.,* 295 F.3d 256, 261 n. 2 (2d Cir. 2002); *Concession Consultants, Inc. v. Mirisch,* 355 F.2d 369, 371 (2d Cir.1966); *Georcely v. Ashcroft,* 375 F.3d 45, 49 (1st Cir.2004). Conversely, were the government correct that § 1252(b)(2) concerns subject matter jurisdiction, then regardless of when—or even whether—an objection to jurisdiction was raised, we would have no choice but to dismiss the petition, *see Arbaugh v. Y & H Corp.,* —— U.S.

——, ——, 126 S.Ct. 1235, 1244, 163 L.Ed.2d 1097 (2006), or perhaps to transfer it pursuant to 28 U.S.C. § 1631, *e.g., Dorf & Stanton Commc'ns, Inc. v. Molson Breweries,* 56 F.3d 13, 15–16 (2d Cir.1995) (transfer). *But cf. Paul v. INS,* 348 F.3d 43, 47–48 (2d Cir.2003) (jurisdiction retained). The upshot is that if subject matter jurisdiction is proper in a court, that court may act in excess of its authority or even offend the Constitution without losing jurisdiction over the matter before it. *Sapia v. United States,* 433 F.3d 212, 217 (2d Cir.2005).

### A. Statutory Interpretation of 8 U.S.C. § 1252(b)(2)

■■■ The question, then, is whether 8 U.S.C. § 1252(b)(2) defines proper venue or circumscribes subject matter jurisdiction. We turn to the statute, which provides as follows,

> The petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings. The record and briefs do not have to be printed. The court of appeals shall review the proceeding on a typewritten record and on typewritten briefs.

8 U.S.C. § 1252(b)(2). Several observations are pertinent with respect to this text.

First, the terms of § 1252(b)(2) do not refer to our jurisdiction to entertain petitions for review. This comment is singularly apropos here where most of the rest of 8 U.S.C. § 1252 (which is entitled "Judicial review of orders of removal") as well as the REAL ID Act's amendments thereto speak *precisely* to the boundaries of an appellate court's jurisdiction over petitions for review. For instance, subsection (a)(2) of § 1252, entitled "Matters not subject to judicial review," is entirely concerned with federal jurisdiction, explicitly withdrawing

jurisdiction for certain types of claims (*e.g.,* denials of discretionary relief, § 1252(a)(2)(B)) while restoring it for others (*e.g.,* questions of law or constitutional claims, § 1252(a)(2)(D)).

It would be anomalous, therefore, for Congress to take away jurisdiction without even implicitly referring to that term—or its occasional equivalent, "judicial review"—when it has elsewhere, in the very same statute, made so careful a delineation. Indeed, Congress went so far as to provide in § 1252 express definitions for the terms "judicial review" and "jurisdiction to review"—which are, after all, *legal* terms frequently and familiarly used by courts—to doubly ensure clarity on the topic:

> For purposes of [the INA], in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

8 U.S.C. § 1252(a)(5) (as amended by REAL ID Act Pub.L. No. 109–13, § 106(a)(1)(B), 119 Stat. at 310–11).

In view of the extraordinary attention Congress directed toward federal jurisdiction over petitions for review in § 1252, utilizing the applicable terms over two dozen times in a single statute, it is hard for us to believe that the legislature would then neglect to express a similarly clear intent—or any intent at all—to circumscribe jurisdiction when it came to defining the circuit locality of filing such petitions as set forth by § 1252(b)(2).

That § 1252(b)(2) is not a jurisdictional statute makes sense in light of the underlying purpose and statutory background of REAL ID itself. For one of the major projects of REAL ID was to amend § 1252 to clarify federal jurisdiction following the Supreme Court's decision in *St. Cyr.* In that case, the Supreme Court found ambiguous provisions in § 1252 and amendments thereto referring to "judicial review" and "jurisdiction to review" as the terms pertained to withdrawal of habeas jurisdiction. 533 U.S. at 314, 121 S.Ct. 2271. Noting "the strong presumption in favor of judicial review of administrative action," *id.* at 298, 121 S.Ct. 2271, and the "serious [constitutional] issue" that would arise if the provisions were interpreted to withdraw habeas jurisdiction without "provid[ing] [an] adequate substitute," *id.* at 305, 121 S.Ct. 2271, the Court held the relevant § 1252 provisions and amendments did not repeal the federal courts' habeas jurisdiction, *id.* at 314, 121 S.Ct. 2271.

Congress responded to *St. Cyr* by enacting the REAL ID Act, which amended § 1252 to make unquestionably clear that "the terms 'judicial review' and 'jurisdiction to review' include habeas corpus review." REAL ID Act § 106(a)(1)(B), 119 Stat. at 310 (codified at 8 U.S.C. § 1252(a)(5)). However, in a nod to the teaching of *St. Cyr,* Congress also provided in REAL ID what it deemed would be an adequate substitute for habeas corpus by adding a new provision, § 1252(a)(2)(D), permitting judicial review of "constitutional claims or questions of law." REAL ID Act § 106(a)(1)(A)(iii), 119 Stat. at 310; *see Xiao Ji Chen v. U.S. Dep't of Justice,* 434 F.3d 144, 151–53 (2d Cir.2006). Given the careful, even meticulous, construction and treatment of federal jurisdiction with respect to petitions for review rendered by the REAL ID Act's amendments to § 1252, it should be plain beyond any doubt that § 1252(b)(2), which was left untouched by those amendments, does not concern jurisdiction.

Further, § 1252(b)(2)'s language regarding filing locality reveals its non-jurisdictional character by the company it keeps. *See United States v. Dauray,* 215 F.3d 257, 262 (2d Cir.2000). In addition to requiring that petitions for review be filed in the circuit where the immigration proceedings were completed, § 1252(b)(2) provides that the immigration record and briefs need not be printed and that the Court "shall" conduct review on "typewritten" briefs. It would be absurd to construe those provisions as concerning jurisdiction—for example, as *compelling* dismissal if an attorney submitted a handwritten brief. And, most obviously (though unexpectedly not most weighty, *see St. Cyr,* 533 U.S. at 308–09, 121 S.Ct. 2271 (title of statute cannot trump its clear terms)), § 1252(b)(2) is entitled *"Venue and forms"* (emphasis added), further confirming that this is a venue and not a jurisdictional provision. *INS v. Nat'l Ctr. for Immigrants' Rights, Inc.,* 502 U.S. 183, 189, 112 S.Ct. 551, 116 L.Ed.2d 546 (1991); *Xiao Ji Chen,* 434 F.3d at 152.

Finally, we note that our holding on this issue is in accord with every circuit to have directly addressed it, including courts that have encountered it in the context of habeas appeals converted to petitions for review. *Jama v. Gonzales,* 431 F.3d 230, 233 (5th Cir.2005) (per curiam); *Bonhometre,* 414 F.3d at 446 n. 5; *Georcely,* 375 F.3d at 49; *Nwaokolo v. INS,* 314 F.3d 303, 306 n. 2 (7th Cir.2002) (per curiam). *Nwaokolo* is particularly instructive, for there the Seventh Circuit, in holding that § 1252(b)(2) "is clearly a venue provision," contrasted it with jurisdictional provisions, explaining,

> Provisions specifying where a suit shall be filed, as distinct from specifying what kind of court or other tribunal it shall be filed in, are generally considered to be specifying venue rather than jurisdiction. It would be usurpative for a federal court to assert jurisdiction over a case

that the Constitution or statute had consigned to a state court, or even for a federal district court to assert jurisdiction over a case that should have been brought in a federal court of appeals .... But it is not usurpative for one federal court of appeals to assert jurisdiction ... over a case that it would have been authorized to adjudicate if only the effects of the order sought to be reviewed had been felt in one part of the country rather than another.

*Id.* at 307 n. 2 (quoting *New York v. EPA,* 133 F.3d 987, 990 (7th Cir.1998)). Section 1252(b)(2) specifies where a petition shall be filed, not the kind of court for such filings, and is therefore patently a venue provision.

### B. *Government's Contrary Interpretation*

The government nonetheless maintains that the venue provision of § 1252(b)(2) is in fact jurisdictional. It relies on dicta in *Ishak,* in which the First Circuit observed that even when an appeal is pending in the appellate court, it also remains pending (though dormant) in the district court from whence it came. *Ishak,* 422 F.3d at 29–30. Thus, the government reasons, since Moreno–Bravo's case is still technically pending in the district court, and since REAL ID unambiguously requires habeas petitions so pending to be transferred to the court of appeals designated by § 1252(b)(2), *Amunikoro,* 432 F.3d at 386, this Court too must transfer the case to the Fifth Circuit. We think this reasoning is demonstrably flawed. Even accepting for purposes of argument that Moreno–Bravo's case remains pending in the district court, we note that § 106(c) of REAL ID specifically instructs that such cases should be transferred *by* the *district* court and says nothing with respect to transfers by courts of appeals. REAL ID Act

§ 106(c), 119 Stat. at 311. The government's reading of § 106(c) is markedly strained in this regard and therefore unpersuasive.

The government next insists that *Ishak* further militates in favor of a jurisdictional reading of § 1252(b)(2) because the First Circuit recognized that it could not retain jurisdiction over a habeas appeal if the immigration proceedings were conducted in another circuit. But now, instead of § 106(c), the government misreads *Ishak.* There the First Circuit only said, without mentioning jurisdiction, that "[s]ome habeas appeals pending in this court may not be properly converted before us to petitions for review" and then cited § 1252(b)(2), *Ishak,* 422 F.3d at 30 n. 6—intimating that were it the case that venue lay not in that court, conversion would be inappropriate, and perhaps a remand to the district court for transfer to the correct circuit, or transfer by the appellate court itself, would be in order. *See, e.g., Hyun Min Park v. Heston,* 245 F.3d 665 (8th Cir.2001). We need not and do not address whether, in lieu of conversion, remand for transfer or immediate transfer is a preferable course for cases such as Moreno–Bravo's, for, as remarked on earlier, the government itself has requested that we convert this appeal pursuant to our holding in *Gittens* and has never questioned the propriety of our doing so.

The government stands on slightly firmer though ultimately failing ground when it points to the statutory text of § 1252(a)(5) and REAL ID Act § 106(a)(1)(B). As we observed a moment ago, the REAL ID Act amended § 1252 to mandate that "a petition for review filed with the *appropriate court of appeals in accordance with this section* shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of" the INA.

REAL ID Act § 106(a)(1)(B), 119 Stat. at 310 (codified at 8 U.S.C. § 1252(a)(5)) (emphasis added). This is unquestionably a jurisdiction-stripping provision, particularly as it relates to habeas jurisdiction. But does it also strip jurisdiction from courts that are not appropriate in the sense that they are of improper venue? In other words, the question is whether "appropriate court of appeals"—as the term is used in § 1252(a)(5)—is exclusive of courts for which venue is improper under § 1252(b)(2), thereby withdrawing, by implication, jurisdiction from such courts.

We think that the "appropriate court of appeals" language of § 1252(a)(5) does not imbue the venue provision of § 1252(b)(2) with jurisdictional force. First and most importantly, as we have already explained, given the statutory and legislative context of the REAL ID Act and § 1252 and Congress' careful attention to matters of jurisdiction, and in the face of a strong presumption in favor of judicial review of final removal orders, such an oblique method for creating a jurisdictional limitation would be a highly disfavored construction. *Cf. St. Cyr,* 533 U.S. at 298–99, 121 S.Ct. 2271.

Second, the language of § 106(a) says "in accordance with *this section,*" that is, § 1252, *not* "in accordance with § 1252(b)(2)"—in contrast to § 106(c) which expressly mentions " § 242(b)(2)" of the INA (that is, § 1252(b)(2)) when it instructs district courts to transfer habeas petitions. We take this as weighing against a jurisdictional reading of § 1252(b)(2). "[W]here Congress includes particular language in one section of a statute but omits it in another" we should refrain from reading into the statute a phrase that Congress has left out of the latter section. *Keene Corp. v. United States,* 508 U.S. 200, 208, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (quoting *Russello*

*v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)). Indeed, the negative implication is felt with strongest force here because it arises in the context of disparate provisions in the same section of REAL ID which "had already been joined together and were being considered simultaneously when the language raising the implication was inserted." *Lindh v. Murphy,* 521 U.S. 320, 330, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Third, although nine times out of ten the appropriate court of appeals will indeed be the one for which venue lies, there is always that tenth time when, for some reason, the parties overlook or fail to object to improper venue, perhaps until after the case has been submitted, thus waiving or forfeiting the objection. *See, e.g., Georcely,* 375 F.3d at 49 (exercising jurisdiction over petition for review where venue was likely defective under § 1252(b)(2) because objection was "belatedly made on the eve of a scheduled argument"). At that point, the term "appropriate court of appeals" is broad enough to include, in addition to petitions of appropriate venue, petitions of improper venue while keeping intact the court's subject matter jurisdiction despite the procedural defect. *Cf. Sapia,* 433 F.3d at 217. The government's reading of § 1252(a)(5) & (b)(2), on the other hand, would leave a court of appeals in the intolerable position of being compelled to dismiss a petition for review even at the very latest stages of the litigation, frustrating Congress' clear purpose of expediting these petitions through the judicial process. *See Xiao Ji Chen,* 434 F.3d at 151 n. 3.

Finally, the government points out that the venue language of § 1252(b)(2) is mandatory, *see Paul,* 348 F.3d at 45, states that we have held jurisdictional similar mandatory language in § 1252(b)(1) (setting the filing deadline for petitions of review), *Malvoisin v. INS,* 268 F.3d 74, 75 (2d Cir.2001), and cites cases from other circuits describing, without analysis, § 1252(b)(2) as jurisdictional, *e.g., Hyun Min Park,* 245 F.3d at 666. None of these arguments carries the day.

To begin, that language is mandatory does not necessarily render it jurisdictional. *See Eberhart v. United States,* ——— U.S. ———, 126 S.Ct. 403, 406–07, 163 L.Ed.2d 14 (2005) (per curiam); *cf. Sapia,* 433 F.3d at 217. Next, our cases interpreting § 1252(b)(1)—a provision which in any event is distinguishable because it governs the sequence between tribunals (the BIA and then the federal court of appeals), *see Joshi v. Ashcroft,* 389 F.3d 732, 734–35 (7th Cir.2004)—obviously shed no light on whether § 1252(b)(2) is jurisdictional. Finally, we agree with the Seventh Circuit that the opinions from other circuits that occasionally use the term "jurisdictional" in reference to § 1252(b)(2) "offer no rationale that supports construing § 1252(b)(2) to deprive any circuit court of appeals of subject matter jurisdiction over any petition for review." *Nwaokolo,* 314 F.3d at 306 n. 2; *cf. Arbaugh,* ——— U.S. at ———, 126 S.Ct. at 1242–43 (unrefined dispositions dismissing "for lack of jurisdiction" are merely "drive-by jurisdictional rulings" that should be accorded "no precedential effect" on the question whether the federal court had authority to adjudicate the claim).

## C. *Transfer of the Converted Petition*

■ In short, § 1252(b)(2) is a venue provision, not a jurisdictional one. We therefore are not compelled to dismiss or transfer the petition, and in the circumstances here presented, we decline to do so. Moreno–Bravo, having been in the custody of the Bureau of Immigration and Customs Enforcement since March 2001, has also waited over three and a half years

for a federal court to adjudicate his claims. The district court, indeed, has already provided him with one round of judicial review in a thorough opinion, albeit one that has been rendered a nullity by REAL ID. *See Duvall*, 436 F.3d at 386. Moreover, like the virtually identical cases in the Third and Fifth Circuits, Moreno–Bravo's appeal already has been thoroughly briefed and argued before this Court, *see Jama*, 431 F.3d at 233; *Bonhometre*, 414 F.3d at 446 n. 5, not once but twice, pursuant to our order for supplemental briefing and appointed counsel. In these rather unique circumstances, dealing as we do with "one of a handful of habeas petitioners whose cases the passage of the REAL ID Act left in procedural limbo," *Amunikoro*, 432 F.3d at 385, we agree with our sister circuits that have considered this precise issue that it would be a manifest injustice to now transfer this case to another court for duplicative proceedings, *Jama*, 431 F.3d at 233.

In making this determination, we also are informed by the analogous scenario in which a court of appeals is faced with the decision whether to transfer a case for want of jurisdiction pursuant to its authority under 28 U.S.C. § 1631. In certain circumstances, § 1631 requires transfer of such a case "unless it [i]s not in the interest of justice to do so." *Paul*, 348 F.3d at 46. However, even when a court does not have *subject matter jurisdiction* over the merits of the appeal, the court may, "in the interest of justice," 28 U.S.C. § 1631, decide not to transfer if it concludes that the case is a "sure loser" on the merits. "[W]hether or not the suit has any possible merit bears significantly on whether the court should transfer," and if it does not, the court should not waste the time of another court by transferring it. *Phillips*, 173 F.3d at 610–11; *see, e.g., Adeleke v. United States*, 355 F.3d 144, 152 (2d Cir. 2004). The case *sub judice*, of course,

does not involve § 1631 because we do in fact have jurisdiction to consider the merits, being concerned only with venue and convenience. But the utter meritlessness of Moreno–Bravo's claims, discussed *infra*, and therefore the futility of permitting him another round of review in the Fifth Circuit, certainly bears on our decision to deny transfer.

We express no opinion, however, on whether the course we have chosen in this case would be appropriate in a different context—for instance a petition for review brought in the first instance under 8 U.S.C. § 1252 and not complicated by the transitional rules of REAL ID. In this regard we only observe that there may well be circumstances in which a court should not permit asylum applicants to waive or forfeit venue objections, and that a court may raise them *sua sponte*. *See, e.g., Stich v. Rehnquist*, 982 F.2d 88, 89 (2d Cir.1992) (per curiam); *cf. Jama*, 431 F.3d at 233 (declining to raise *sua sponte* issue concerning defective venue under 8 U.S.C. § 1252(b)(2)). And, of course our opinion is inapplicable to the quite different situation where a petition for review is incorrectly filed in the district court. But, with respect to cases like Moreno–Bravo's, we are in somewhat unchartered waters, as we, unaided by express instructions from Congress or the REAL ID Act, attempt to impose order on these *sui generis* appeals.

## III   Merits

Often for a court, determining the scope of its own powers—with regard to jurisdiction or venue, for instance—proves a more complex task than determining the rights of the parties before it. That is true here, as Moreno–Bravo's substantive arguments for relief are utterly without merit and may be quickly disposed of.

■ In *St. Cyr*, the Supreme Court held that relief of the sort Moreno–Bravo seeks—discretionary relief pursuant to the now-repealed § 212(c) of the INA (formerly codified at 8 U.S.C. § 1182(c) (1994))—"remains available for aliens ... whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea *under the law then in effect.*" 533 U.S. at 326, 121 S.Ct. 2271 (emphasis added). Appellant declares that under the law in effect on December 11, 1996 (the date of his plea agreement), his conviction for second-degree robbery did not constitute an "aggravated felony" for purposes of INA § 212(c)—*ergo,* he remains eligible for § 212(c) relief.

Such premise is demonstrably wrong. Under the law in effect on December 11, 1996, his crime of second-degree robbery *did* constitute an aggravated felony for purposes of the INA. On September 30, 1996, nearly three months prior to plaintiff's plea agreement, Congress amended the INA's definition of aggravated felony to include crimes of violence and theft, like Moreno–Bravo's, for which the imprisonment term was at least one year. *See* IIRIRA § 321(a)(3), 110 Stat. at 3009–627 (codified at 8 U.S.C. § 1101(a)(43)(F)-(G)). Moreover, the new definition applied regardless of when the conviction was entered, and to any administrative action taken on or after September 30, 1996 (Moreno–Bravo's removal proceedings were initiated in February 2001). *Id.* § 321(b), 110 Stat. at 3009–628 (codified at 8 U.S.C. § 1101(a)(43)(U) (Supp. II 1996)) ("Notwithstanding any other provision of law (including any effective date), the term ['aggravated felony'] applies regardless of whether the conviction was entered before, on, or after [September 30, 1996]."); *id.* at § 321(c) (amendments to aggravated felony definition "apply to actions taken on or

after [September 30, 1996], regardless of when the conviction occurred"); *see Brown v. Ashcroft,* 360 F.3d 346, 353–54 (2d Cir. 2004); *Kuhali,* 266 F.3d at 110–11; *see also Guaylupo–Moya,* 423 F.3d at 131; *Gelman v. Ashcroft,* 372 F.3d 495, 499 (2d Cir.2004); *Gousse v. Ashcroft,* 339 F.3d 91, 99 (2d Cir.2003). Thus, even as of December 11, 1996, petitioner was deportable as an alien convicted of an aggravated felony. *See* 8 U.S.C. § 1227(a)(2)(A)(iii).

He was not, however, eligible for § 212(c)'s discretionary relief—even under the law in effect at the time of his plea agreement. Several months prior to Moreno–Bravo's guilty plea, Congress enacted a separate law, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (effective April 24, 1996), which rendered an alien convicted of an aggravated felony—regardless of the length of imprisonment—ineligible for § 212(c) relief. *See id.* § 440(d), 110 Stat. at 1277; *see also Khan v. Ashcroft,* 352 F.3d 521 (2d Cir. 2003). Hence, when this petitioner entered into his plea agreement, he could not have had any reasonable reliance on the continued availability of § 212(c) relief under the holding of *St. Cyr,* 533 U.S. at 324, 326, 121 S.Ct. 2271, because his conviction would already preclude him from such relief.

Consequently, for purposes of the INA, Moreno–Bravo's conviction qualifies as an aggravated felony for which he is removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) (stating that an "alien who is convicted of an aggravated felony at any time after admission is deportable"); *see Gousse,* 339 F.3d at 98, and his arguments to the contrary are without merit.

## CONCLUSION

We have considered Moreno–Bravo's remaining arguments and find them all also

to be without merit. Accordingly, the petition for review is denied. Having completed our review, we vacate any stay of removal we previously granted in this proceeding and deny as moot any pending motion for a stay of removal.

APPENDIX

Section 106. JUDICIAL REVIEW OF ORDERS OF REMOVAL.

(a) In General.—Section 242 of the Immigration and Nationality Act (8 U.S.C. § 1252) is amended—

    (1) in subsection (a)—

        (A) in paragraph (2)—

\* \* \* \*

        (iii) by adding at the end the following:

"(D) Judicial review of certain legal claims.—Nothing in subparagraph (B) or (C), or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section."; and

    (B) by adding at the end the following:

\* \* \* \*

"(5) Exclusive means of review.—Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act, except as provided in subsection (e). For purposes of this Act, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms 'judicial review' and 'jurisdiction to review' include habeas corpus review pursuant to section 2241 of title 28, United States Code, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).";

\* \* \* \*

(c) Transfer of Cases.—If an alien's case, brought under section 2241 of title 28, United States Code, and challenging a final administrative order of removal, deportation, or exclusion, is pending in a district court on the date of the enactment of this division, then the district court shall transfer the case (or the part of the case that challenges the order of removal, deportation, or exclusion) to the court of appeals for the circuit in which a petition for review could have been properly filed under section 242(b)(2) of the Immigration and Nationality Act (8 U.S.C. 1252), as amended by this section, or under section 309(c)(4)(D) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1101 note). The court of appeals shall treat the transferred case as if it had been filed pursuant to a petition for review under such section 242, except that subsection (b)(1) of such section shall not apply.