**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4663
_____

LUIS TORRES-ESCALANTES
a/k/a Cesar Federico Gabino Lopez
a/k/a Cesar Lopez Gavino
a/k/a Cesar Lopez,
                                                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                                    Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A200-688-871)
Immigration Judge:  Honorable John A. Duck, Jr.

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 22, 2015
Before: FUENTES, VANASKIE and SCIRICA, Circuit Judges

(Opinion filed: November 25, 2015)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Luis Torres-Escalantes, who is proceeding pro se and in forma pauperis, petitions for review of the Board of Immigration Appeals' ("BIA") November 20, 2014 order. We will grant in part and deny in part the petition and remand for further proceedings.

I.

Petitioner is a native and citizen of Mexico. It appears that he initially entered the United States without inspection in 2002. He was later charged as removable and deported to Mexico in November 2010. He reentered the United States shortly thereafter, and in September 2013 was apprehended by Immigration and Customs Enforcement ("ICE") officers, who issued a notice of intent to reinstate his prior removal order. When Petitioner was thereafter detained by the Department of Homeland Security ("DHS"), he indicated that he feared returning to Mexico and applied for (1) withholding of removal under 8 U.S.C. § 1231(b)(3) based on his membership in a particular social group (deportees),[1] and (2) relief under the Convention Against Torture ("CAT"). An immigration officer conducted a reasonable fear interview in October 2013, determined that Petitioner did have a reasonable fear of persecution, and referred Petitioner's case to an immigration judge ("IJ").

During Petitioner's proceedings before the IJ, he testified that upon his 2010 deportation to Mexico, he was kidnapped, beaten, and raped by the Los Zetas gang,

---

[1] Petitioner later narrowed the definition of his proposed social group to include only deportees who have family members residing in the United States.

2

which targeted him for extortion because he was a deportee with family in the United States. Two expert witnesses testified on Petitioner's behalf at his merits hearing. First, Dr. Arno Vosk stated that Petitioner's scars were consistent with his testimony about being beaten and burned by cigarettes. Second, Dr. Ann E. Middough testified that Petitioner suffers from Post-Traumatic Stress Disorder and has a significant fear of returning to Mexico, which increases his risk of suicide. In support of his claim, Petitioner also filed numerous documents—including an expert report from Thomas Boerman, Ph.D.[2]—concerning the country conditions in Mexico.

The IJ determined that Petitioner was credible but denied his application for relief, and the BIA affirmed that decision in a November 20, 2014 opinion.

Petitioner has now filed a petition for review,[3] which the Government opposes.

II.

We have jurisdiction to review final orders of the BIA pursuant to 8 U.S.C. §

---

[2] Dr. Boerman has a Ph.D. from the University of Oregon, "with an emphasis on the culture, sociology and psychology of gangs; the socio-political context within which they exist; and the social, economic and politic conditions that underlie their development, diffusion and persistence." (A.R. 204.)

[3] Although Petitioner's immigration proceedings were docketed in York, Pennsylvania, the IJ who presided over this case sits in Louisiana, which is in the Fifth Circuit. Thus, there is some question whether venue is proper in this Court, as a petition for review "shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2). However, this statute is non-jurisdictional, Khouzam v. Att'y Gen., 549 F.3d 235, 249 (3d Cir. 2008), and the Government has not argued that the case should proceed in the Fifth Circuit, see Moreno-Bravo v. Gonzales, 463 F.3d 253, 258 (2d Cir. 2006) (explaining that the issue of venue "is in the nature of a convenience to litigants and subject to their disposition"). We therefore decline to transfer this case.

1252. Where, as here the BIA affirmed and partially reiterated the IJ's discussions and determinations, we review both decisions. See Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009). We review the agency's decision for substantial evidence, considering whether it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Balasubramanrim v. I.N.S., 143 F.3d 157, 161 (3d Cir. 1998) (citation and internal quotation marks omitted). The agency's decision must be affirmed "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003) (quoting Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir. 2001)).

We first consider Petitioner's CAT claim. To succeed on such a claim, he must demonstrate that "'it is more likely than not that he . . . would be tortured if removed to the proposed country of removal.'" Sevoian v. Ashcroft, 290 F.3d 166, 174-75 (3d Cir. 2002) (quoting 8 C.F.R. § 208.16(c)(2)). The torture must be "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). This Court has held that one way a petitioner can show that a government acquiesces in torture is if it is "willfully blind" to such activities. Silva-Rengifo v. Att'y Gen., 473 F.3d 58, 65 (3d Cir. 2007). And a government can be found to be willfully blind "if it [i]s unable to control those engaged in torturous activity." Pieschacon-Villegas v. Att'y Gen., 671 F.3d 303, 311 (3d Cir. 2011).

Here, Petitioner introduced evidence concerning the Mexican government's ineffective attempts to control both criminal gangs and official corruption. For example,

4

Dr. Boerman's report stated that "[i]t is . . . well known that the Mexican government is essentially powerless to contain these criminal organizations or to protect the public, particularly those who have been targeted or would be at risk from them." (A.R. 207.) Dr. Boerman identified migrants, deportees, and long-term residents of the United States as being at risk of being kidnapped by criminal organizations. (See id. at 220-21.) Additionally, Dr. Boerman stated that the

> Mexican government's efforts to combat these organizations has been largely paralyzed by the noxious effect of the [organizations'] intimidation of public officials and rampant corruption among police, military, and corrections officials, prosecutors, judges, and elected leaders. The end result is that the Mexican government is both unable and unwilling to protect individuals at risk from criminal organizations . . . .

(Id. at 209.) He then explained that, although the Mexican government has fired

> thousands of corrupt officers . . . , thousands more remain in their positions, and newly corrupted officers are continually coming onto the scene. . . . As of November 2012, 80 percent of the 50,000 officers who had failed confidence tests were still in their positions. To some degree, this can be attributed to corruption itself, and to a lack of political will; but it also reflects the untenable nature of the situation . . . .

(Id. at 211-12 (footnote omitted).)

As to the kidnapping of deportees, Dr. Boerman stated that "[a] particular concern involves Mexican government officials' direct involvement," which "has been extensively documented by numerous governmental and non-governmental organizations, including the U.S. State Department." (Id. at 221-22.) The U.S. State Department's Country Report for Mexico stated that "[k]idnapping remained a serious and underreported problem for persons of all socioeconomic levels, and there were

5

credible reports of police involvement in kidnappings for ransom, primarily at the state and local level." (Id. at 869.) The Country Report concluded that, "[d]espite some arrests for corruption, widespread impunity for human rights abuses by officials remained a problem in both civilian and military jurisdictions." (Id. at 865.) Further, one article introduced into evidence by Petitioner explained that, after a mass grave of 72 migrants was found in Tamaulipas in 2010, the Mexican government introduced a comprehensive strategy to prevent and combat migrant kidnapping; however, "[a]lthough positive on its face, the failure to implement the[] measures rendered this proposal largely meaningless." (Id. at 262-63.)

The BIA did not reference Dr. Boerman's report, but did acknowledge that country condition evidence showed that corruption is a problem in Mexico and that "police and military have been involved in serious abuses." (BIA Op. at 3.) The IJ noted that the Country Report "also shows that the government is trying to improve this situation and reduce these problems. For example, 120 state police officers were relieved of their duties for corruption and abuse of power." (IJ Op. at 8 (citation omitted).) The IJ concluded that this "shows that the Mexican government does not consent or acquiesce in the torture of its citizens but rather attempts to curb unlawful activity by its officials." (Id.) The IJ also stated that the fact that the Mexican government has an agency to help migrants means that it "recognizes the dangers faced by its returning citizens and seeks to provide some protection and/or assistance." (Id.) The BIA concluded that the IJ's determination that the Mexican government did not acquiesce to torture was not clearly erroneous.

6

Neither the BIA nor the IJ, however, addressed the possibility that, even though the Mexican government attempted to protect its citizens, it could still acquiesce to torture due to its inability to actually protect its citizens from torture. There is no indication that the agency considered evidence, such as Dr. Boerman's report, indicating that the Mexican government could not control Los Zetas or the corrupt officials who are involved in kidnappings and torture. Rather, the agency seemed to assume that as long as the Mexican government tried to help its citizens, then it could not be found to have acquiesced. Under Pieschacon-Villegas, that view is a misreading of the law. See 671 F.3d at 311. As a result, the agency erred in its review of Petitioner's CAT claim, and we will remand for the BIA to reconsider this claim.

Substantial evidence does, however, support the determination that Petitioner did not meet the standard for withholding of removal. Withholding of removal is mandatory when "the Attorney General decides that the alien's life or freedom would be threatened in that country" on account of race religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3). To obtain such relief, the applicant must establish a "clear probability"—i.e., that it is more likely than not—that he or she would suffer persecution upon return to his or her country. Kaita v. Att'y Gen., 522 F.3d 288, 296 (3d Cir. 2008).

Here, the BIA agreed with the IJ's determinations that: (1) Petitioner's articulated group of "Mexican deportees with family living in the United States" lacked the "particularity required to make it a cognizable social group;" and (2) Petitioner did not show "that the mistreatment he encounter[ed] or fears was or would be on account of

7

anything other than general gang violence or crime." (BIA Op. at 2.) Even if Petitioner's articulated group constituted a particular social group as defined under the statute, the BIA did not abuse its discretion in concluding that the motive for Petitioner's kidnapping was the criminals' typical desire to acquire wealth. Such a motivation has been determined not to provide a basis for withholding of removal. See Shehu v. Att'y Gen., 482 F.3d 652, 657 (3d Cir. 2007) (mistreatment resulting from the bare desire for money is not persecution on account of a protected ground).

For the foregoing reasons, we will grant the petition for review in part, deny it in part, vacate the BIA's order, and remand for further consideration in light of this opinion.