Giuseppe SPINA, Petitioner–Appellant,

v.

**DEPARTMENT OF HOMELAND SECURITY, Respondent–Appellee.**

**Docket No. 04–3177–PR.**

United States Court of Appeals, Second Circuit.

Argued: Nov. 17, 2005.

Decided: Nov. 28, 2006.

Thomas I. Sheridan III, (Melissa C. Welch, on the brief) Hanly, Conroy, Bierstein & Sheridan LLP, New York, NY, for Petitioner–Appellant.

William J. Nardini, Assistant United States Attorney, (Sandra S. Glover, Assistant United States Attorney, and Davon Collins, Law Student Intern, on the brief), for Kevin J. O'Connor, United States Attorney for the District of Connecticut, Hartford, CT, for Respondent–Appellee.

Before OAKES, STRAUB, and RAGGI, Circuit Judges.

RAGGI, Circuit Judge.

Petitioner Giuseppe Spina appeals from a final judgment of the United States District Court for the District of Connecticut (Robert N. Chatigny, *Judge* ), entered on May 25, 2004, which dismissed his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. *See Spina v. Dist. Dir.—Office of Homeland Sec.*, 2004 WL 1151587 (D.Conn. May 21, 2004), 2004 U.S. Dist. LEXIS 9189, at *2. Spina, a citizen of Italy and for more than thirty years a lawful permanent resident of the United States, filed a habeas petition challenging a deportation order of the Immigration and Naturalization Service ("INS"),[1] which order was based on Spina's 1994 Connecticut conviction for first-degree manslaughter in connection with the stabbing death of his estranged wife. Spina charged the INS with erroneously deeming him ineligible for discretionary relief from deportation pursuant to § 212(c) of the Immigration and Nationality Act ("INA"), *codified at* 8 U.S.C. § 1182(c) (1994), on the ground that he had served a term of imprisonment of at least five years. Although the district court rejected this argument, Spina here pursues two challenges to the calculation of his served time of imprisonment, both of which must succeed for him to secure relief from this court. Spina submits (1) that time he spent in pre-conviction detention was not "served" as part of the "term of imprisonment" imposed upon conviction and, therefore, cannot count toward accrual of § 212(c)'s five-year bar;

and (2) that, pursuant to *Edwards v. INS*, 393 F.3d 299 (2d Cir.2004), time he spent in post-conviction custody also cannot count toward accrual of the § 212(c) bar, at least for the period Spina administratively challenged the INS's initial erroneous retroactive application to his case of the amendment to § 212(c) effected by § 440(d) of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996).

In accordance with the REAL ID Act of 2005, Pub.L. No. 109–13, § 106(a), 119 Stat. 231, 310 (codified at 8 U.S.C. § 1252(a)(5)), we convert Spina's appeal to a petition for review by this court of the challenged INS rulings. Pursuant to that review, we resolve Spina's first argument against him on the merits, holding that the time he spent in pre-conviction detention between May 31, 1992, and March 18, 1994, may be calculated together with the time he spent in post-conviction detention between March 18, 1994, and September 27, 1997, the date of the original Immigration Judge ("IJ") ruling, to support the conclusion that he was then ineligible for § 212(c) relief because he had "served … a term of imprisonment of at least five years." 8 U.S.C. § 1182(c) (1994). Accordingly, we deny his petition for review on that ground without addressing his second point.

## I. *Background*

### A. *Spina's Connecticut Conviction and Incarceration for First–Degree Manslaughter*

In 1967, Giuseppe Spina, then a seventeen-year-old native of Italy, was admitted

---

1. Pursuant to the Homeland Security Act of 2002, Pub.L. No. 107–296, 116 Stat. 2135 (codified as amended in various sections of the U.S.C.), the INS was abolished and its functions reassigned to subdivisions of the newly created Department of Homeland Security. *See United States v. Lopez*, 445 F.3d 90, 92 n. 1 (2d Cir.2006). Nevertheless, because the actions at issue on this appeal were initially taken by the INS, in this opinion, we continue to refer to that agency even though the Department of Homeland Security, as its successor, is now correctly identified as the respondent-appellee.

to the United States as a lawful permanent resident. Some twenty-five years later, on May 31, 1992, Spina went to the home of his estranged wife in Rocky Hill, Connecticut, and stabbed her to death with a kitchen knife. Arrested at the scene of the crime, Spina was initially charged in Connecticut state court with one count of second-degree murder. Because he could not meet the $750,000 bail set for his release, Spina remained in detention through the conclusion of his criminal case.

On February 1, 1994, Spina disposed of the murder charge against him by entering a plea of *nolo contendere* to the lesser crime of first-degree manslaughter. See Conn. Gen.Stat. § 53a–55(a)(3). On March 18, 1994, the state court entered a judgment of conviction sentencing Spina to a twenty-year term of incarceration, whereupon he was transferred to the custody of the state penal system. As of the date of conviction, Spina had spent slightly less than twenty-two months in detention. Pursuant to state law, on March 29, 1994, prison authorities automatically credited Spina with this detention period, thereby reducing by 655 days the time he would have to remain in prison on the imposed twenty-year sentence. See Conn. Gen. Stat. § 18–98d(a)(1).[2]

**2.** Connecticut General Statute § 18–98d(a)(1) states that, with certain exceptions not here applicable, a charged person who "is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence equal to the number of days which such person spent in [custody] from the time such person was placed in presentence confinement to the time such person began serving the term of imprisonment imposed."

**3.** The term "aggravated felony" is statutorily defined to include "a crime of violence (as defined in section 16 of Title 18, United States Code, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). Spina does not here dispute that first-degree

### B. *Spina's Deportation Proceedings*

Federal immigration law authorizes the removal from the United States of any alien who has been convicted of an "aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii). Pursuant to this statute, on June 2, 1995, the INS issued Spina an order to show cause why he should not be deported in light of his conviction for first-degree manslaughter.[3] The ensuing deportation proceedings were both lengthy and complex. We summarize them briefly to provide some background to this appeal.

### 1. *The Initial IJ Ruling*

Spina initially appeared before an IJ on the order to show cause on July 16, 1996. Following two unopposed adjournments, his removal hearing was held on September 23, 1997. At that hearing, Spina did not challenge the fact of his manslaughter conviction or its qualification as an aggravated felony; instead, he applied for discretionary relief from removal pursuant to INA § 212(c).

Prior to the 1996 enactment of AEDPA and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009 (codi-

manslaughter under Connecticut law constitutes such a crime of violence and, therefore, an aggravated felony; thus, we have no reason to consider that question on this appeal. *See Norton v. Sam's Club,* 145 F.3d 114, 117 (2d Cir.1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal."). This court has, however, concluded that first-degree manslaughter under New York law qualifies as a crime of violence pursuant to 8 U.S.C. § 1101(a)(43)(F), *see Vargas–Sarmiento v. United States Dep't of Justice,* 448 F.3d 159, 168–75 (2d Cir.2006), although second-degree manslaughter under New York law does not, *see Jobson v. Ashcroft,* 326 F.3d 367, 372–74 (2d Cir.2003).

fied in scattered sections of 8 U.S.C.), section 212(c) of the INA had granted the Attorney General discretionary power to waive the deportation of certain lawful permanent residents, even those convicted of aggravated felonies, provided they had not yet served a term of imprisonment of at least five years on such a felony conviction.[4] *See, e.g., Edwards v. INS*, 393 F.3d at 302 (noting that, for many aliens, § 212(c) "constituted the only possible way of securing relief from deportation"); *Bedoya–Valencia v. INS*, 6 F.3d 891, 895 (2d Cir.1993). By order dated September 23, 1997, the IJ ruled that Spina was ineligible for § 212(c) relief in light of AEDPA § 440(d), which amended § 212(c) to make discretionary relief from removal unavailable to persons convicted of certain offenses, including aggravated felonies.[5] Accordingly, the IJ ordered Spina deported to Italy.

### 2. Proceedings Before the BIA

On October 15, 1997, Spina appealed his deportation order to the Board of Immigration Appeals ("BIA"), challenging the retroactive application of AEDPA § 440(d) to his case. On July 7, 1998, the BIA returned Spina's case to the IJ, requesting a decision specifically addressing AEDPA's retroactive applicability. Before the IJ acted on the remand, this court resolved the issue, holding in *Henderson v. INS*, 157 F.3d 106, 130 (2d Cir.1998), that AEDPA § 440(d) was *not* intended to apply retroactively to aliens, like Spina, whose deportation proceedings commenced before AEDPA went into effect on April 24, 1996. *See also INS v. St. Cyr*, 533 U.S. 289, 326, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (holding that, despite AEDPA and IIRIRA, " § 212(c) relief remains available for aliens ... whose convictions were obtained through plea agreements and who ... would have been eligible for [such] relief at the time of their plea under the law then in effect"). In light of *Henderson*, on March 7, 1999, the IJ reopened Spina's deportation proceeding "for a determination of whether or not 212(c) relief should be available to him." *In re Giuseppe Spina*, A14 777 679 (Immig. Ct. Boston Mar. 7, 1999). On February 10, 2000, a newly assigned IJ concluded that the BIA remand order did not, in fact, afford jurisdiction for an IJ to reopen Spina's deportation proceeding; accordingly,

---

4. Section 212(c) stated as follows:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this subsection (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

8 U.S.C. § 1182(c), *repealed by* Pub.L. No. 104–208, § 304(b), 110 Stat. 3009–597 (1996). Although the statute, on its face, appears to apply only to qualified aliens who attempt to reenter the United States, this court has interpreted the section to extend to aliens in both deportation and exclusion proceedings. *See Bedoya–Valencia v. INS*, 6 F.3d 891, 895 (2d Cir.1993); *Francis v. INS*, 532 F.2d 268, 273 (2d Cir.1976); *see also Matter of Silva*, 16 I. & N. Dec. 26, 30 (BIA 1976) (embracing reasoning in *Francis* ).

5. Later in 1996, Congress enacted IIRIRA, which eliminated § 212(c) relief entirely, and replaced it with a process called "cancellation of removal." IIRIRA § 304 (codified at 8 U.S.C. § 1229b). *See generally INS v. St. Cyr*, 533 U.S. 289, 297, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (discussing amendment and repeal of § 212(c)).

the IJ certified Spina's case to the BIA for it to reconsider his § 212(c) challenge in light of *Henderson.*

The BIA accepted the certification and, relying on *Henderson,* concluded that the original IJ had erred in retroactively applying AEDPA to Spina's already pending deportation proceeding to hold him ineligible for § 212(c) relief. Nevertheless, the BIA declined to afford Spina any relief on appeal because, at the time of its May 31, 2000 hearing, he had "now served more than 5 years in prison" on an aggravated felony conviction, a circumstance that disqualified him from § 212(c) relief even before the enactment of AEDPA. *In re Giuseppe Spina,* A14 777 679 (BIA May 31, 2000). Spina subsequently filed a motion to reopen, which was also denied by the BIA. *In re Giuseppe Spina,* A14 777 679 (BIA Apr. 21, 2004).

## C. *Spina's Habeas Corpus Petition*

Spina challenged the BIA decision by petitioning the district court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. In that petition, Spina did not dispute that § 212(c) relief was, in fact, unavailable to an alien who had served five years in prison for an aggravated felony. Rather, he argued that the BIA erred as a matter of law in dismissing his appeal because, at the time the INS order to show cause was issued in 1995, he had not yet served five years' imprisonment. The district court rejected this argument, holding that the relevant date for calculating the five-year bar was May 31, 2000, when "the BIA affirmed the immigration judge's decision. . . . [At that time, Spina] had served more than five years in prison." *Spina v. Dist. Dir.—Office of Homeland Sec.,* 2004 WL 1151587, 2004 U.S. Dist. LEXIS 9189, at *2. Spina timely appealed.

## D. *The Decision in Edwards v. INS*

On December 17, 2004, after Spina's appeal had been filed but before argument, this court issued its ruling in *Edwards v. INS,* 393 F.3d 299. *Edwards* held that, in cases in which an alien accrued more than five years' imprisonment subsequent to an INS denial of § 212(c) relief on the erroneous ground that AEDPA's amendment or IIRIRA's repeal of that statute applied retroactively, the alien was entitled to "*nunc pro tunc* relief" because "agency error would otherwise result in an alien being deprived of the opportunity to seek [§ 212(c)] relief." *Id.* at 310–11.[6] In light of *Edwards,* Spina has retailored his habeas challenge, arguing on appeal that he too is entitled to *nunc pro tunc* relief under § 212(c). In advancing this argument, Spina confronts two hurdles, both of which he must clear to succeed on this appeal.

First, Spina's case is distinguishable from *Edwards* in that, on September 23, 1997, when the IJ initially denied Spina § 212(c) relief on the erroneous assumption that it was barred by AEDPA § 440(d), Spina had already spent more than five years in custody: nearly twenty-two months in pre-conviction detention and just over forty-two months in postconviction imprisonment. As *Edwards* observed, "agency error would not 'result' in an alien being deprived of the opportunity to seek deportation relief where the alien would have independently been barred *at the time* of the error from applying for the form of relief at issue." *Id.* at 311 n. 15 (emphasis in original). *Edwards,* however, specifically left open the question "whether time accrued in pretrial detention should be counted in calculating whether the [§ 212(c)] five year bar applies." *Id.* at

---

**6.** As *Edwards* explained, "[w]hen a matter is adjudicated *nunc pro tunc,* it is as if it were done as of the time that it should have been done." 393 F.3d at 308.

304 n. 7. Spina urges us to rule that it does not.

Were Spina to persuade us on this point—which he does not for reasons discussed further in this opinion—he would then face a second hurdle in pursuing *nunc pro tunc* relief. Unlike the *Edwards* petitioners, Spina had already spent five years in post-conviction imprisonment when the BIA rejected his administrative appeal on May 31, 2000. *Edwards* "express[ed] no views on whether an award of *nunc pro tunc* relief would be similarly warranted where the alien accrued more than five years imprisonment during the pendency of administrative appeals." *Id.* at 312 n. 18. Accordingly, Spina urges us to hold that nunc *pro tunc* relief is available even in such circumstances.

### E. *Spina's Deportation to Italy*

On April 27, 2005, while Spina's appeal was pending and he was still serving his Connecticut manslaughter sentence, he moved in this court for a stay of removal pending appeal, which motion, being unopposed, was granted on May 24, 2005. Soon thereafter, Spina apparently changed his mind and moved to lift the stay so that, upon his release from state prison, he could be promptly deported to Italy rather than detained further by federal immigration authorities. In so moving, Spina emphasized that any deportation would still be involuntary, that he was not waiving his appellate rights, and that any lifting of the stay should be "without prejudice to the rights he asserts in this litigation." On July 11, 2005, with the government's consent, this court granted Spina's motion. Accordingly, soon after Spina's August 2, 2005 release from Connecticut state prison, federal immigration authorities deported him to Italy.

## II. *Discussion*

### A. *Jurisdictional Issues*

Before reaching the merits of Spina's petition, we are obliged to consider the jurisdictional effect of two events occurring during its pendency: (1) the enactment of the REAL ID Act of 2005; and (2) Spina's deportation to Italy. *See Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 328 (2d Cir.2005) ("[W]here jurisdiction is questionable we are obliged to examine the question *sua sponte*.").

### 1. *The REAL ID Act*

■ On May 11, 2005, Congress enacted the REAL ID Act, which, among other things, eliminates habeas corpus jurisdiction over final orders of deportation, exclusion, and removal, and provides that "a petition for review filed with an appropriate court of appeals ... shall be the sole and exclusive means for judicial review" of such orders. Pub.L. No. 109–13, § 106(a), 119 Stat. 231, 310 (codified at 8 U.S.C. § 1252(a)(5)). In *Gittens v. Menifee*, this court ruled that appeals involving habeas corpus petitions "pending before this court on the effective date of the REAL ID Act are properly converted to petitions for review and retained by this court." 428 F.3d 382, 385 (2d Cir.2005) (alterations and internal quotation marks omitted). Because Spina's appeal, filed on June 7, 2004, was plainly pending before this court on May 11, 2005, we convert his habeas corpus petition into a petition for review and proceed to address its merits. *See id.* at 385–86 (holding that "we may resolve" newly converted petitions "without remand to the district court").

In doing so, we are mindful that the REAL ID Act states that "judicial review of an order of removal is available only where 'another court has not decided the validity of the order, unless the reviewing court finds that the petition presents

grounds that could not have been presented in the prior judicial proceeding or that the remedy provided by the prior proceeding was inadequate or ineffective to test the validity of the order.'" *Id.* at 386 (quoting 8 U.S.C. § 1252(d)(2)). We have not previously had occasion to consider the applicability of this language to a district court merits ruling that is the subject of the habeas appeal that we convert to a petition for review. This issue was not squarely presented in *Gittens v. Menifee* because the habeas petition in that case came before this court "only for the purposes of gatekeeping review under the AEDPA," without any disputed merits ruling by the district court. *Id.* at 386 n. 4. In this case, however, the district court rejected Spina's habeas petition on its merits.

Like the Third Circuit, we here conclude that Congress's "clear intent" in enacting the REAL ID Act, "to have all challenges to removal orders heard in a single forum," i.e., the courts of appeals, is best effected by treating a district court's merits decision on a converted habeas petition as "non-existent," and by proceeding ourselves to address the merits of the challenged removal order. *Bonhometre v. Gonzales,* 414 F.3d 442, 446 (3d Cir.2005) ("In view of the atypical procedural posture of this case and the effect of the REAL ID Act, we will consider the District Court's opinion to be non-existent, and will address the procedural due process claims raised by [the petitioner] in his opening brief to the District Court as if they were raised in a petition for review before us in the first instance."). Accordingly, because, consistent with Congress's intent, we "now review the BIA's decision, not the district court's" denial of habeas relief, we conclude that § 1252(d)(2) does not deprive us of jurisdiction. *Alvarez–Barajas v. Gonzales,* 418 F.3d 1050, 1053 (9th Cir.2005) (noting that conversion of

habeas petition pending on appeal to a petition for review "changes the decision we review, and we now review the BIA's decision, not the district court's orders").

### 2. *Spina's Deportation to Italy*

██ Nor does Spina's deportation to Italy affect our constitutional or statutory subject matter jurisdiction. As to the former, *Swaby v. Ashcroft* holds that "an alien seeking § 212(c) relief presents a live case or controversy even where the alien has been deported" if he still "faces a statutory bar to reentry." 357 F.3d 156, 161 (2d Cir.2004). An alien such as Spina, convicted of an aggravated felony, generally faces a "lifetime" reentry bar, *id.* at 160; *see* 8 U.S.C. §§ 1182(a)(2)(A), (a)(9)(A), unless he receives relief from removal such as was afforded by § 212(c). Thus, because a remand by this court to the INS for fresh consideration of Spina's § 212(c) application would afford him at least "a chance of reentering the United States," that chance is sufficient to give him the "personal stake" in this litigation necessary to allay any constitutional jurisdictional concerns. *Swaby v. Ashcroft,* 357 F.3d at 161 (internal quotation marks omitted).

As for our statutory jurisdiction, although 8 U.S.C. § 1 105a(c) had provided that "an order of deportation ... shall not be reviewed by any court if the alien ... has departed from the United States after issuance of the order," that provision was repealed effective April 1, 1997. *See* IIRIRA, Pub.L. No. 104–208, 110 Stat. 3009–546. No statute currently in force makes the alien's presence in the United States a jurisdictional prerequisite for our consideration of "questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D); *see Moore v. Ashcroft,* 251 F.3d 919, 922 (11th Cir.2001) ("Under the former provisions of the INA ... judi-

cial review was statutorily barred for aliens who had been deported from the United States or who voluntarily departed pending review of the removal order.... Noticeably absent from the [IIRIRA] permanent rules, however, is any similar language removing federal review jurisdiction in the event an alien departs or is removed."); *Tapia Garcia v. INS*, 237 F.3d 1216, 1217 (10th Cir.2001) (stating that "deportation no longer forecloses judicial review"). Spina's petition falls within § 1252(a)(2)(D) because he contends that the INS erred as a matter of law in the means it used to determine that he was ineligible for § 212(c) relief.

Accordingly, despite the enactment of the REAL ID Act and Spina's deportation, we maintain subject matter jurisdiction in this case.

**B. Spina's Claim for Nunc Pro Tunc Relief**

**1. Spina Had Already Served Five Years' Imprisonment for Manslaughter at the Time the IJ Initially Denied Him § 212(c) Relief**

■ Spina's argument for *nunc pro tunc* relief depends, in the first instance, on his ability to demonstrate that, at the time of the IJ's legally erroneous September 23, 1997 ruling, he was, in fact, eligible for § 212(c) relief. *See Edwards v. INS,*

393 F.3d at 311 n. 15 (holding that alien whose § 212(c) application was initially denied on a legally erroneous ground is not entitled to *nunc pro tunc* remedy if he was actually ineligible for § 212(c) relief on the date of the IJ's erroneous ruling). As Spina concedes, by its terms, § 212(c) makes an alien ineligible for its discretionary relief if he has served a term of at least five years' imprisonment for a felony conviction. Spina submits that this bar does not apply in this case because, as of September 23, 1997, he had served only forty-two months in post-conviction custody. He insists that the additional twenty-two months he spent in pre-conviction detention are not properly considered part of his "term of imprisonment" in calculating the applicability of the § 212(c) bar to his case. We disagree.

**a. Connecticut Law Does Not Control Our Determination of Whether Spina Had Served Five Years of His Term of Imprisonment for Manslaughter Under INA § 212(c)**

■ Preliminarily, we observe that neither § 212(c) nor the definitional section of the INA, *see* 8 U.S.C. § 1182(c) (1994), expressly states whether pre-conviction detention constitutes part of the term of imprisonment served for a felony conviction.[7] In arguing that his preconviction

7. Although the INA states that "[a]ny reference to a term of imprisonment ... with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law," 8 U.S.C. § 1101(a)(48)(B), this definition says nothing about whether pre-conviction detention is appropriately treated as part of the term of imprisonment *served* on a judgment.

The government invites us to defer to the BIA's conclusion that, in the context of another provision of immigration law, INA § 101(f)(7), 8 U.S.C. § 1101(f)(7), pre-conviction detention constitutes service of the term

of imprisonment. *See Matter of Valdovinos,* 18 I. & N. Dec. 343 (BIA 1982). We need not decide what, if any, deference is due this interpretation of § 101(f)(7). Nor need we consider the merits of the Ninth Circuit's narrower construction of this statute. *See Gomez–Lopez v. Ashcroft,* 393 F.3d 882, 886 (9th Cir.2004) (holding, without discussing *Valdovinos,* that § 101(f)(7)'s explicit "requirement that the confinement be as a result of conviction precludes counting any time a person may have spent in pre-trial detention"). For the reasons discussed *infra* at 125–126, we conclude that, when time spent in pre-convic-

detention does not constitute time served on his term of imprisonment, Spina relies on Connecticut law, specifically, Connecticut General Statute § 18–98d(a)(1), which, he submits, draws a clear distinction between the time a defendant spends in presentence confinement and the time he begins serving a term of imprisonment:

> Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, ... because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence equal to the number of days which such person spent in such facility from the time such person was placed in *presentence confinement* to the time such person began serving *the term of imprisonment imposed.*

Conn. Gen.Stat. § 18–98d(a)(1) (emphasis added).

■ Spina's argument rests on a flawed assumption: that Connecticut law controls the application of § 212(c) to his case. In fact, the principle is well established that, unless Congress plainly manifests an "intent to incorporate diverse state laws into a federal statute, the meaning of [a] federal statute should *not* be dependent on state law." *United States v. Turley,* 352 U.S. 407, 411, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957) (emphasis added); *accord Dickerson v. New Banner Inst., Inc.,* 460 U.S. 103, 119, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983) (noting presumption that "when Congress enacts a statute[,] ... it does not intend to make its application dependent on state law" (internal quotation marks omitted)).

Applying this principle in *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), a case in

which a sentencing enhancement depended on whether a defendant had previously been convicted of a specified "violent felony," to wit, "burglary," 8 U.S.C. § 924(e)(2)(B)(ii), the Supreme Court ruled that application of the § 924(e) enhancement did not depend on the particular definition of burglary adopted by the state of conviction, but on a uniform definition of burglary to be derived by federal courts from the "generally accepted contemporary meaning" of the term. *Taylor v. United States,* 495 U.S. at 596, 110 S.Ct. 2143; *see also Williams v. Taylor,* 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) ("We give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import.") (internal quotation marks omitted). Our court has followed suit. In *Sui v. INS,* we cited *Taylor* in stating that "Congress did not intend to allow the INA's definition of 'attempt' to vary solely according to the labels applied by the jurisdiction in which an alien was charged." 250 F.3d 105, 114 (2d Cir.2001). Indeed, we have specifically observed that "[t]he immigration laws contain no provision ... indicat[ing] that they are to be interpreted in accordance with state law." *United States v. Campbell,* 167 F.3d 94, 97 (2d Cir.1999) (holding that whether person has been convicted of an aggravated felony within the language of 8 U.S.C. § 1326(b)(2) "is necessarily ... a question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the State" (internal quotation marks omitted)).

Accordingly, we need not here decide whether we agree with Spina's construction of Connecticut General Statute § 18–98d(a)(1) because that state law does not,

---

tion detention is credited against or used to reduce a term of imprisonment, that detention is plainly and commonly understood to

qualify as part of the time "served on the term of imprisonment" for the felony crime of conviction. 8 U.S.C. § 1182(c).

in any event, control our construction of INA § 212(c).[8] *Cf. United States v. Ramirez*, 421 F.3d 159, 163 (2d Cir.2005) ("The fact that New York nominally distinguishes between 'probation' and 'conditional discharge' is of limited relevance to defining the meaning of the term 'probation' as used in § 4A1.2(c)(1)(A) [of the federal Sentencing Guidelines]."). Rather, we look beyond the language of any individual state's law to identify the "generally accepted contemporary" understanding of whether credited pre-conviction detention is appropriately viewed as part of the time served on a term of imprisonment. *Taylor v. United States*, 495 U.S. at 596, 110 S.Ct. 2143.

---

8. Spina's construction of Connecticut law is, in fact, debatable. As the Connecticut Supreme Court has observed, the underlying purpose of § 18–98d(a)(1) "is to give recognition to the period of presentence time served and *to permit the prisoner, in effect, to commence serving his sentence from the time he was compelled to remain in custody* ... because of the court's refusal to allow bail or the defendant's inability to raise bail." *Holmquist v. Manson*, 168 Conn. 389, 393–94, 362 A.2d 971, 974 (1975) (emphasis added); *accord Johnson v. Comm'r of Corr.*, 80 Conn. App. 574, 580, 836 A.2d 453, 457 (2003) ("Presentence confinement credit should reduce the number of days of sentenced confinement so as to permit the detainee, in effect, to commence his sentence from the time he was compelled to remain in custody."). Thus, it appears that, once it credits a defendant with pre-conviction detention, Connecticut treats that time exactly as if it had been served after the entry of judgment.

9. *See* 18 U.S.C. § 3585(b) ("A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—(1) as a result of the offense for which the sentence was imposed...."); Ala.Code § 15–18–5; Alaska Stat. § 12.55.025; Ariz.Rev.Stat. § 13–709; Ark.Code Ann. § 16–93–610; Cal.Penal Code § 2900.5; Colo.Rev.Stat. § 18–1.3–405; Conn. Gen.Stat. § 18–98d; Del.Code Ann. tit. 11, § 3901; D.C.Code § 24–221.03; Fla. Stat. § 921.161; Ga.Code Ann. § 17–10–11; Haw.

---

**b.** *Time Spent in Pre–Conviction Detention That Is Credited Against a Term of Post–Conviction Imprisonment Is Commonly Understood to Be Part of the Time Served for the Felony Crime*

Applying that principle to this case, we note that the federal government, fifty states, and the District of Columbia provide by statute, rule, or court decision that time spent by a defendant in pre-conviction detention is to be treated as a day-for-day credit or reduction of the term of imprisonment imposed upon conviction.[9] This unanimity is strong evidence of a

---

Rev.Stat. § 706–671; Idaho Code Ann. § 18–309; 730 Ill. Comp. Stat. 5/5–8–7; Ind.Code Ann. § 35–50–6–3; Iowa Code § 903A.5; Kan. Stat. Ann. § 21–4614; Ky.Rev.Stat. Ann. § 532.120; La.Code Crim. Proc. Ann. art. 880; Me.Rev.Stat. Ann. tit. 17–A, § 1253; Md.Code Ann. Corr. Servs. § 11–502; Mass. Gen. Laws ch. 127, § 129B; Mich. Comp. Laws § 769.11b; Minn. R.Crim. P. 27.03, subd. 4; Miss.Code Ann. § 99–19–23; Mo. Rev.Stat. § 558.031; Mont.Code Ann. § 46–18–403; Neb.Rev.Stat. § 83–1,106; Nev.Rev. Stat. Ann. § 176.055; N.H.Rev.Stat. Ann. § 651–A:23; N.J. R. of Court § 3:21–8; N.M. Stat. Ann. § 31–20–12; N.Y. Penal Law § 70.30; N.C. Gen.Stat. § 15–196.1; N.D. Cent.Code § 12.1–32–02; Ohio Rev.Code Ann. § 2967.191; Okla. Stat. tit. 57, § 138; Or.Rev.Stat. § 137.370; 42 Pa. Cons.Stat. Ann. § 9760; R.I. Gen. Laws § 12–19–2; S.C.Code Ann. § 24–13–40; Tenn.Code Ann. § 40–23–101; Tex.Code Crim. Proc. Ann. art. 42.03; Vt. Stat. Ann. tit. 13, § 7031; Va.Code Ann. § 53.1–187; Wash. Rev.Code § 9.94A.505; W. Va.Code § 61–11–24; Wis. Stat. § 973.155; *see also State v. Green*, 524 N.W.2d 613, 615 (S.D.1994) (holding that defendant's inability "to post bail which results in presentence incarceration establishes indigency which entitles defendant to credit for the jail time served before he is sentenced"); *Rosalez v. State*, 955 P.2d 899, 900 (Wyo. 1998) (same); *State v. Richards*, 740 P.2d 1314, 1317 (1987) (same).

Spina does not contend that federal or state law was materially different in 1990 when

128

common understanding that, after judgment, any credited pre-conviction detention effectively becomes time served on the imposed term of imprisonment. *See, e.g., Taylor v. United States*, 495 U.S. at 598, 110 S.Ct. 2143 (construing "burglary," as used in federal statute, in "the generic sense in which the term is now used in the criminal codes of most States"); *Perrin v. United States*, 444 U.S. 37, 45, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) (observing that bribery, as used in federal statute, has contemporary meaning adopted "[i]n 42 States and in federal legislation"). Indeed, when courts sentence defendants in pre-conviction detention to "time served," it is generally understood that the pre-conviction custody thereby becomes the term of imprisonment imposed by the judgment. *See United States v. Rodriguez–Lopez*, 170 F.3d 1244, 1246 (9th Cir.1999) (holding that "time served" sentence constituted "sentence of imprisonment of at least sixty days" where defendant had served sixty-two days in pre-conviction detention); *United States v. Atkinson*, 15 F.3d 715, 721 (7th Cir.1994) (holding that, where court suspended four-year prison term except for seventy-seven days' pre-conviction detention, that time became served sentence for purposes of calculating Sentencing Guidelines); *Rodriguez v. United States*, 111 F.Supp.2d 112, 114 (D.Conn. 1999) ("A judge's sentence of time served necessarily incorporates the time a defendant was imprisoned prior to trial, unless specifically stated otherwise.").

In urging a different conclusion, Spina argues that some states, notably Kansas, specifically provide for the commencement of a sentence to be back-dated to allow for time spent in pre-conviction detention. *See* Kan. Stat. Ann. § 21–4614. In Con-

necticut and most other jurisdictions, however, a sentence dates from the judgment of conviction. In such circumstances, Spina submits, pre-conviction detention should not be viewed as time served on a term of imprisonment not yet imposed. Indeed, he notes that a prisoner can earn sentence credits or reductions for reasons unrelated to time spent in custody, for example, good behavior. Spina's arguments are unconvincing.

A credit for good behavior allows a defendant to avoid incarceration altogether for the period in question; a credit or reduction for pre-conviction detention, however, recognizes that a defendant has already spent the specified period of time in jail. Connecticut itself acknowledges this distinction. As we have already noted, *supra* at 127 n. 8, Connecticut's Supreme Court has observed that a good behavior credit serves to "reduce the time a prisoner must serve pursuant to a sentence," whereas a credit for pre-conviction detention "permit[s] the prisoner, in effect, to commence serving his sentence from the time he was compelled to remain in custody." *Holmquist v. Manson*, 168 Conn. 389, 393–94, 362 A.2d 971, 974 (1975) (discussing Connecticut's "good time," or "good behavior," statute). In sum, whether a jurisdiction, like Kansas, treats pre-conviction custody as a basis for expressly back-dating the start of a defendant's prison term, or whether, like Connecticut, it applies a credit or reduction to a prison term that dates from conviction, the end result is the same: every day the defendant spent in pre-conviction custody is treated as a day served on the term of imprisonment. *See Taylor v. United States*, 495 U.S. at 599, 110 S.Ct. 2143 (looking to substance of state law, not "la-

Congress amended INA § 212(c) to make discretionary relief unavailable to an alien who had served at least five years of the term of

imprisonment imposed for his crime of conviction.

bels," in discerning contemporary meaning of words used in federal statute).

■ Accordingly, we conclude that when, as in this case, a defendant is credited with time served in pre-conviction detention, thereby reducing on a day-for-day basis the remaining time he will have to serve on his term of imprisonment, that pre-conviction detention is plainly understood to be part of the term of imprisonment "served" for the felony crime of conviction, regardless of whether the result is to make the defendant eligible for earlier release from confinement or ineligible for discretionary relief pursuant to INA § 212(c).

c. *Spina's Argument for Treating Pre–Conviction Detention as a "Served" Part of the Term of Imprisonment Only at the Conclusion of that Term*

■ Spina argues that, even if pre-conviction detention is treated as time served on a term of imprisonment, fairness dictates that such time should accrue for purposes of INA § 212(c) only at the end, not the beginning, of a defendant's sentence. Otherwise, he submits, there could be an unfair distinction in the § 212(c) eligibility of aliens convicted of the same crime and sentenced on the same date to identical terms of imprisonment if one of the aliens had served time in pre-conviction detention and the other had not. Specifically, the alien who had served pre-conviction detention would become ineligible for § 212(c) relief sooner than the alien who had not. The argument is unconvincing.

Preliminarily, we observe that the "unfairness" alleged by Spina must be viewed in context. If prompt crediting of pre-

conviction detention accelerates an alien's ineligibility for § 212(c) relief, it also accelerates his eligibility for certain pre-release programs and for release itself. We do not understand Spina to be urging delayed accrual of detention time for these beneficial purposes. Nor does he point us to any authority to support the assignment of different accrual times for pre-conviction detention depending on the benefit to the defendant.

Even if Spina could present a more compelling claim of unfairness, however, his delayed accrual argument would fail for a more fundamental reason: it is at odds with the common understanding of the language of § 212(c). That statute renders an alien ineligible for discretionary relief if he "has served" at least five years of the term of imprisonment imposed for an aggravated felony conviction. The plain meaning of "served" as used in connection with a period of incarceration is "to [have] put in" a specified amount of time. *Webster's Third New Int'l Dictionary* 2075 (3d ed.1986). *See William L. Rudkin Testamentary Trust v. Comm'r*, 467 F.3d 149, 152 (2d Cir. 2006) (" 'We give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import.' " (quoting *Williams v. Taylor*, 529 U.S. at 431, 120 S.Ct. 1479)). Plainly, Spina had "put in" 655 days of pre-conviction custody by March 18, 1994, the date he was sentenced. Indeed, Connecticut credited this time against his term of imprisonment on March 29, 1994, in short, within days of judgment.[10] Moreover, Spina points us to no jurisdiction that does not credit a defendant with pre-conviction detention soon after judgment. Thus, it would defy common sense to con-

---

10. As we have already discussed, state law does not control our construction of § 212(c). Nevertheless, to the extent Spina suggests

that Connecticut law supports his delayed accrual arguments, the record is to the contrary.

clude that Spina had not, in fact, served his pre-conviction time until more than a decade later. *Cf. United States v. D'Oliveira*, 402 F.3d 130, 132 (2d Cir.2005) (holding, in context of Sentencing Guidelines, that "time served" sentence reflects "a specific term of imprisonment—the amount of time *actually served*" on the date of pronouncement) (emphasis added).

■ Spina nevertheless asserts that the rule of lenity and the doctrine of constitutional avoidance support his delayed accrual argument. These doctrines have no application where, as in this case, traditional rules of construction permit us to conclude that there is no ambiguity in the statute. *See Muscarello v. United States*, 524 U.S. 125, 138, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) ("The rule of lenity applies only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended." (internal quotation marks omitted)); *Clark v. Martinez*, 543 U.S. 371, 385, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005) ("The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction...."). The language of § 212(c) plainly contemplates that pre-conviction detention qualifies as time served immediately upon crediting or reduction. In this case, consistent with common practice, that crediting or reduction occurred soon after judgment. Thus, the statute does not contemplate delaying accrual to the end of Spina's sentence.

### d. *Section 212(c) Does Not Violate Due Process or Equal Protection*

■ Spina submits that, if INA § 212(c) is construed to include credited pre-conviction detention as time served on a term of imprisonment, the statute is unconstitutional because it (1) subjects pre-trial detainees to punishment without the procedural safeguards of trial (or the knowing waiver of these safeguards in connection with a guilty plea) in violation of due process, and (2) impermissibly discriminates among alien defendants based on their financial ability to post bail in violation of equal protection. *See* U.S. Const., amend. V. We disagree.

### (1) *Due Process*

Spina cites *Bell v. Wolfish*, 441 U.S. 520, 535–36, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), to support his claim that "if pretrial detention counts toward the five years" referenced in § 212(c), he is thereby subjected to "punishment" in violation of due process. Appellant Br. at 31. In fact, the due process concern identified in *Bell v. Wolfish* related to punishment imposed on pretrial detainees without the procedural safeguards of trial. 441 U.S. at 535–36, 99 S.Ct. 1861. That concern is not applicable here. The ineligibility bar for discretionary relief established in § 212(c) applies only to persons who have actually been convicted of felony crimes, not to persons who are simply pretrial detainees.

In any event, Spina does not—and cannot—show that the alleged reduction in his window of § 212(c) eligibility was established "for the purpose of punishment," a factor critical to *Bell's* analysis. *Id.* at 539, 99 S.Ct. 1861 ("A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose."). Here, any reduction is incidental to § 212(c)'s non-punitive goal to bring more uniformity to the treatment of alien defendants whose criminal conduct is sufficiently serious that they actually serve five years' imprisonment, without regard to whether that service pre-dates or post-

dates judgment. *See generally Giusto v. INS,* 9 F.3d 8, 10 (2d Cir.1993) (observing that § 212(c)'s five-year bar was "part of an effort to 'broaden[ ] the list of serious crimes,'" which preclude certain benefits under the INA, and further noting that "release on parole … prior to serving five years[ ] may well indicate circumstances suggesting that although convicted of a felony defined as aggravated, the alien should receive relatively lenient treatment" (internal quotation marks omitted) (quoting H.R. Conf. Rep. No. 955, at 132, 101st Cong., 2d Sess., reprinted in 1990 U.S.C.C.A.N. 6784, 6797)).

### (2) *Equal Protection*

██ As for Spina's equal protection challenge, we observe that § 212(c)'s eligibility bar draws no irrational, much less invidious or suspect, distinctions among the persons to whom it applies. To the contrary, the statute applies to any aggravated felon who has served at least five years of his term of imprisonment. This classification rationally relates to the aforementioned congressional purpose to bar serious criminals from § 212(c) relief. *See Giusto v. INS,* 9 F.3d at 10; *see also Fiallo v. Bell,* 430 U.S. 787, 794, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) (holding that Congress's classifications among aliens will be upheld against an equal protection challenge if there is a "facially legitimate and bona fide reason" for the classifications (quoting *Kleindienst v. Mandel,* 408 U.S. 753, 770, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972))); *Skelly v. INS,* 168 F.3d 88, 91 (2d Cir.1999) (upholding legislative scheme deporting certain aliens but not others against equal protection challenge "if any state of facts reasonably may be conceived to justify it") (internal quotations omitted). Thus, we need not consider whether Congress might have employed more precise language or other classifications better to achieve its goal. *See Mourning v. Family*

*Publ'ns Serv.,* 411 U.S. 356, 378, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973) (holding that under rational basis review, "[i]t is not a function of the courts to speculate as to whether the statute is unwise or whether the evils sought to be remedied could better have been regulated in some other manner").

Spina nevertheless insists that § 212(c) discriminates against indigent aliens because only those who cannot afford to post bail have their time in pre-conviction detention treated as part of their served term of imprisonment, thereby subjecting them to § 212(c) ineligibility sooner than comparably culpable aliens who can afford bail. We are not persuaded. Because § 212(c) is facially neutral, Spina must show more than a disparate impact on indigents to establish a denial of equal protection; he must demonstrate discriminatory purpose. *See Harris v. McRae,* 448 U.S. 297, 324 n. 26, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980) ("[W]hen a facially neutral statute is challenged on equal protection grounds," challenger must "prove that Congress 'selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.'" (quoting *Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (internal quotation marks omitted))). Thus, to support an inference of discriminatory purpose, § 212(c) would have to apply only to indigents, without "reach[ing] anyone outside that class." *M.L.B. v. S.L.J.,* 519 U.S. 102, 127, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996) (distinguishing between sanctions that have disproportionate impact on indigent persons and those that "are wholly contingent on one's ability to pay," and concluding that it is only the latter that implicate equal protection concerns). Spina cannot make such a showing. As the government cor-

rectly points out, indigency is not the only reason why criminal defendants fail to secure bail release. Under federal law, for example, defendants may be detained without bail pending trial based on appropriate findings that they pose a risk of flight or a danger to the community. *See* 18 U.S.C. §§ 3142–43.

Thus, we are not persuaded that the treatment of credited pre-conviction detention as time served on a term of imprisonment evidences an impermissible discriminatory purpose based on indigency.

> 2. *Spina's Argument to Exclude from § 212(c) Consideration Post–Conviction Time Served While Administratively Challenging the Initial IJ Ruling*

Because we conclude that Spina was already ineligible for § 212(c) discretionary relief on September 23, 1997, we need not address his further argument: that time he served in post-conviction custody between September 23, 1997, and May 31, 2000, should not count toward accrual of the § 212(c) incarceration bar because he was then administratively challenging the IJ's erroneous retroactive application of AEDPA § 440(d) to his case.

### III. *Conclusion*

To summarize:

1. Pursuant to the REAL ID Act of 2005, we convert Spina's appeal from the district court's denial of his petition for a writ of habeas corpus challenging his deportation from the United States into a petition for review by this court of the INS's conclusion that he was not eligible for discretionary relief from deportation pursuant to INA § 212(c).

2. On that review, we conclude that, when pre-conviction detention is credited against a term of imprisonment to reduce the time an aggravated felon will spend in custody, that detention is properly treated as time served on the term of imprisonment for purposes of calculating the five-year bar to discretionary relief provided in INA § 212(c).

3. Applying this conclusion to the facts in this case, we conclude that, on September 23, 1997, when Spina was first denied § 212(c) relief by an IJ, he was, in fact, ineligible for § 212(c) relief because his twenty-two months of credited pre-conviction detention together with his forty-two months of post-conviction incarceration established his service of more than five years of his term of incarceration for manslaughter.

Accordingly, despite an initial IJ error in treating AEDPA § 440(d)'s amendment to § 212(c) as retroactive, Spina is not entitled to pursue § 212(c) relief *nunc pro tunc.* His petition for review of the BIA orders of May 31, 2000, and April 21, 2004, is hereby denied.