KLEINFELD, Senior Circuit Judge,
dissenting:
I respectfully dissent.
The majority confuses the unknown with the unknowable. It coins the new term “constructive good time,” under which immigration judges are now required to quantify the unknowable: how much good *818 time a prisoner would have received, had he been in prison instead of where he actually was. This calculation is impossible — not difficult, impossible.
Corpuz concluded a Mother’s Day quarrel with his mother by beating her head in with a hammer. After a lengthy period in jail, and then in a psychiatric facility to determine his competency to stand trial, he was found competent despite his schizophrenia. He pleaded guilty to voluntary manslaughter pursuant to a plea bargain. The sentencing judge credited the preconviction psychiatric confinement against Corpuz’s prison sentence. Corpuz was free three and a half years after he pleaded guilty, but more than five years after his confinement began. Under the eligibility statute at issue, a petitioner is ineligible for relief from removal if he served “a term of imprisonment of at least 5 years.”[1] Corpuz did.
I agree with the majority that when a defendant receives credit against a criminal sentence for time spent in jail or psychiatric confinement before trial, the credited time should be treated as part of the five-year “term of imprisonment” under the statute. Our sister circuits that have addressed the issue also agree.[2] Treating this time credited against prison time as part of the five-year term of imprisonment is fair because the time was actually served in confinement and reduced the
amount of time Corpuz would have otherwise spent in prison. The number is precise and not subject to dispute. This approach does not require the immigration judge, when determining eligibility, to quantify speculation. I also agree with the majority that no “constructive good time” should apply to credited pretrial confinement in jail.
The majority goes off the tracks with its novel concept, “constructive good time.” There is no such thing in Nevada law (or anywhere else, so far as I know). Under this concept, an immigration judge must calculate how much good time a prisoner would have earned while he was in psychiatric confinement before trial, had he been in prison instead.
The majority begs the question with its phrase, “we believe a fair approximation is superior to a precise but unfair calculation.” Obviously “fair” is superior to “unfair.” But if no approximation is possible, then only speculation is possible, and speculation is unfair, arbitrary, and capricious. There is no way to know how much “constructive good time” Corpuz would have earned had he been in prison instead of a psychiatric facility.
Under Nevada good time law, for each month a prisoner serves, he is entitled to a ten-day deduction from his sentence if he had no serious infractions that month and *819 properly performed his assigned duties.[3] If he behaves himself, a Nevada prisoner earns his good time, but only as he goes, not up front.[4] Even if we assume that Corpuz would have behaved perfectly if he had been in prison rather than in a psychiatric facility, it would have taken him six years to earn enough ten-day credits to get out early on his eight-year sentence.[5] To get below the five-year eligibility period, Corpuz would have had to obtain extra credit good time by doing things such as earning his G.E.D.[6] or participating successfully in other programs.[7]
Discretion plays a prominent role in the award and deduction of good time credits. The Director may award good time for “diligent and responsible”[8] behavior, and “exceptional meritorious service.”[9] If a prisoner tests positive for alcohol or a controlled substance, the prisoner forfeits “all deductions earned by the offender before commission of the violation” or “such part of those deductions as the director considers just.”[10] So a prisoner caught with pruno (a prisoner-manufactured alcoholic beverage) may lose all the good time he has earned over five years, or one year of good time, or ten days, or none. Good time is so discretionary, and so dependent on an inmate’s individual conduct while in prison, that application of a formula is inherently and necessarily arbitrary and capricious. A formula is unfair to prison inmates who really try to do all the things that will earn them extra good time. Because no fair approximation can be made, *820 all a remand in this case can do is cause delay and produce an arbitrary outcome.
The majority concedes that good time, constructive or otherwise, does not apply to pretrial jail time. There is no justification for inventing “constructive good time” for pretrial psychiatric confinement but not pretrial jail time. The majority argues first that jail time is shorter because of the Speedy Trial Act,[11] and second that jail is more similar to prison than psychiatric confinement. The first argument lacks merit because a very short time, even a day, may make all the difference to eligibility under the statute, and the states follow their own speedy trial rules, not the federal Speedy Trial Act. The second argument cuts against the majority’s position because the greater similarity of jail to prison implies that if good time is not credited for jail time, there is even less justification for inventing it for something even less like prison.
When a sentencing judge credits against a prison sentence time spent not in prison, whether in jail or a psychiatric facility, the prisoner gets the benefit of less time in prison. He also gets the burden of not being able to earn good time during the period when he was not in prison. He takes the bad with the good. The only fair thing we can do is treat pretrial jail time and psychiatric confinement the same way. Treating them differently, through the novel concept of “constructive good time,” is illogical and unfair because it requires precise calculation of the inherently speculative and incalculable. “[W]e must ... not look for the same degree of exactness in all our studies, but only for as much as the subject-matter in each case allows ....”[12] The majority’s remand for a determination of the amount of construcfive good time that Corpuz might have earned had he been in prison when he was not is precisely the error of attempting a more precise calculation than the subject matter allows.

. Immigration and Nationality Act § 212(c) (codified at 8 U.S.C. § 1182(c) (1992)) states in full:
(c) Nonapplicability of subsection (a)
Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. The first sentence of this sub-section shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.
(emphasis added).

. Moreno-Cebrero v. Gonzales, 485 F.3d 395, 398 (7th Cir.2007); Spina v. Dep’t of Homeland Sec., 470 F.3d 116, 128 (2d Cir.2006).

. Nev.Rev.Stat. § 209.446(1) states in full:
Every offender who is sentenced to prison for a crime committed on or after July 1, 1985, but before July 17, 1997, who has no serious infraction of the regulations of the Department, the terms and conditions of his or her residential confinement, or the laws of the State recorded against the offender, and who performs in a faithful, orderly and peaceable manner the duties assigned to the offender, must be allowed:
(a) For the period the offender is actually incarcerated under sentence;
(b) For the period the offender is in residential confinement; and
(c) For the period the offender is in the custody of the Division of Parole and Probation of the Department of Public Safety pursuant to NRS 209.4886 or 209.4888, a deduction of 10 days from the offender's sentence for each month the offender serves.

. See Nev.Rev.Stat. §§ 209.432-209.451; Hunt v. Warden, 111 Nev. 1284, 903 P.2d 826 (1995).

. His sentence was 8 years, or 2920 days. Assuming he earned a 10 day deduction each month, it would have taken him 6 years to earn 720 days of good time (6 years x 12 months x 10 days = 720 days). This number, plus the time he already served (6 years x 365 days = 2190 days), gets him to 2910 days, just 10 days under his 8 year sentence (2920 days).

. Nev.Rev.Stat. § 209.446(2) states in part:
In addition to the credits allowed pursuant to this subsection, an offender is entitled to the following credits for educational achievement:
(a) For earning a general educational development certificate, 30 days.
(b) For earning a high school diploma, 60 days.
(c) For earning an associate degree, 90 days.

. Nev.Rev.Stat. § 209.446(3) ("The Director may allow not more than 10 days of credit each month for an offender who participates in a diligent and responsible manner in a center for the purpose of making restitution, program for reentry of offenders and parolees into the community, conservation camp, program of work release or another program conducted outside of the prison.”).

. Id.

. Nev.Rev.Stat. § 209.446(4) ("The Director may allow not more than 90 days of credit each year for an offender who engages in exceptional meritorious service.”).

. Nev.Rev.Stat. § 209.367(5).

. 18 U.S.C. § 3161.

. Aristotle, The Nicomachean Ethics 76-77 (J.A.K. Thomson trans., Penguin Books 1976) (1953).